## CLAFLIN v. HOUSEMAN, ASSIGNEE.

1. Under the Bankrupt Act of March 2, 1867 (14 Stat. 517), the assignee might sue in the State courts to recover the assets of the bankrupt, no exclusive jurisdiction having been given to the courts of the United States. *Quœre*, whether such exclusive jurisdiction is given by the Revised Statutes.
2. The statutes of the United States are as much the law of the land in any State as are those of the State; and although exclusive jurisdiction for their enforcement may be given to the Federal courts, yet where it is not given, either expressly or by necessary implication, the State courts, having competent jurisdiction in other respects, may be resorted to.
3. In such cases, the State courts do not exercise a new jurisdiction conferred upon them, but their ordinary jurisdiction, derived from their constitution under the State law.

ERROR to the Supreme Court of the State of New York.

This action was brought in May, 1872, in the New York Supreme Court, county of Kings, by Julius Houseman, as

assignee in bankruptcy of Comstock and Young, against Horace B. Claflin, under the thirty-fifth section of the Bankrupt Act, to recover the sum of $1,935.57, with interest, being the amount collected by Claflin on a judgment against the bankrupts, recovered within four months before the commencement of proceedings in bankruptcy. The ground of the action, as stated in the complaint, was that they (the bankrupts) suffered the judgment to be taken by default, with intent to give Claflin a preference over their other creditors, at a time when they were insolvent, and when he knew, or had reasonable cause to believe, that they were insolvent, and that the judgment was obtained in fraud of the bankrupt law. The defendant demurred to the complaint, assigning as cause, first, that the court had no jurisdiction of the subject of the action; secondly, that the complaint did not state facts sufficient to constitute a cause of action. Judgment was rendered for the plaintiff on the thirteenth day of January, 1873, and was subsequently affirmed both by the general term of the Supreme Court and by the Court of Appeals. This judgment is brought here by writ of error, under the second section of the act of Feb. 5, 1867 (14 Stat. 385).

Argued by *Mr. William Henry Arnoux* for the plaintiff in error.

Where Congress has an exclusive right to legislate, the Federal courts have an exclusive power to adjudicate. *United States* v. *Ames*, 1 W. & M. 76; *United States* v. *Bailey*, 9 Pet. 261; *United States* v. *Cornell*, 2 Mason, 91; *Osborn* v. *U. S. Bank*, 9 Wheat. 818.

Where a State cannot legislate, its courts cannot adjudicate. *United States* v. *Lathrop*, 17 Johns. 4; *Martin* v. *Hunter's Lessee*, 1 Wheat. 304; *Rose* v. *Hinely*, 4 Cranch, 241; *McLean* v. *Lafayette Bank*, 3 McLean, 191; *Stearns* v. *United States*, 2 Paine, 311; *Shearman* v. *Bingham*, 7 N. B. R. 490.

The jurisdiction of the courts of the United States is *exclusive* in all cases arising under the Constitution, laws, or treaties of the United States. Const. U. S., art. 3, sects. 1, 2; 2 Story on Const., sect. 1754; *Martin* v. *Hunter's Lessee, supra; Ex parte Cabrera*, 1 Wash. C. C. 232; *Griffin* v. *Domingues*, 2 Duer, 576; *Mannhardt* v. *Joderstron*, 1 Binn. 138; *Commonwealth* v.

*Kostaff*, 5 Serg. & R. 545; *Davis* v. *Packard*, 7 Pet. 276; *Houston* v. *Moore*, 5 Wheat. 1.

The Bankrupt Act of March 2, 1867, by a just construction of its terms, confers exclusive jurisdiction upon the district and circuit courts of the United States. *Goodall* v. *Tuttle*, 7 N. B. R. 193; *In re Alexander*, 3 id. 6; *Shearman* v. *Bingham*, 7 id. 490; *Ex parte Christy*, 3 How. 292; *Mitchell* v. *Great Milling Works Co.*, 2 Story, 656; *Peck* v. *Jenness*, 7 How. 621; *McLean* v. *Lafayette Bank*, 3 McLean, 190; *Moore* v. *Jones*, 23 Vt. 746.

The right of an assignee to bring suits for the collection of the assets of a bankrupt is a new right conferred upon him by an act of Congress. *Cook* v. *Whipple*, 55 N. Y. 150. Therefore the remedy afforded by the statute is exclusive. *Dudley* v. *Mayhew*, 3 N. Y. 15; *Jordan Plank Road* v. *Morley*, 23 id. 554; *Thurber* v. *Blanck*, 50 id. 80; *Hollister* v. *Hollister Bank*, 2 Keyes, 248; *Almy* v. *Harris*, 5 Johns. 175; *Rex* v. *Robinson*, 2 Burr. 799.

The fact that an assignee in bankruptcy is dependent upon the national tribunals, and independent of those of the States, is conclusive against the jurisdiction of the latter, over statutory actions brought by him as an officer appointed under the laws of the United States. The State courts can neither interfere with, or interrupt, the exercise of the authority with which he is clothed, nor aid in enforcing it. *McKim* v. *Voorhies*, 7 Cranch, 279; *Slocum* v. *Mayberry*, 2 Wheat. 1; *McClung* v. *Silliman*, 6 id. 598; *United States* v. *Barney*, 3 Hall's L. J. 128; *United States* v. *Peters*, 5 Cranch, 115; *McNutt* v. *Bland*, 2 How. 17; *Hopkins* v. *Stockton*, 2 Watts & S. 163.

The United States and the States are distinct and independent autonomies in their sovereign capacity, and their laws are foreign to each other, except in their surrendered powers. *Ohio L. & T. Co.* v. *DeBolt*, 16 How. 428; *Buckner* v. *Finley*, 2 Pet. 590; *Bank of Augusta* v. *Earle*, 13 id. 520. Therefore the State courts have no jurisdiction over an action brought by a person acting in a representative capacity, who has been appointed by a foreign tribunal. *Vermilye* v. *Beatty*, 6 Barb. 429; *Parsons* v. *Lyman* 20 N Y. 103; *Williams* v. *Storrs*, 6 Johns. Ch. 353, *Doolittle* v *Lewis*, 7 id. 45; *Vroom*

v. *Van Horn*, 10 Paige, 549; *Morrell* v. *Dickey*, 1 Johns. Ch.
153; *Brown* v. *Brown*, 1 Barb. Ch. 189; *Petersen* v. *Chemical
Bank*, 32 N. Y. 21; *Matter of Estate of Butler*, 38 id. 400;
*Mosselman* v. *Caen*, 34 Barb. 66; *Abraham* v. *Plestero*, 3 Wend.
538; *Willetts* v. *Waite*, 25 N. Y. 577; *Harrison* v. *Sterry*,
5 Cranch, 299; *Johnson* v. *Hunt*, 23 Wend. 87; *Hoyt* v.
*Thompson*, 5 N. Y. 340; *Peale* v. *Phipps*, 14 How. 368; *Orr*
v. *Amory*, 11 Mass. 25; *Booth* v. *Clark*, 17 How. 322.

Submitted on printed arguments by *Mr. B. F. Lee* for the
defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The point principally relied on by the plaintiff in error
is, that an assignee in bankruptcy cannot sue in the State
courts.

It is argued that the cause of action arises purely and solely
out of the provisions of an act of Congress, and can only be
prosecuted in the courts of the United States, the State courts
having no jurisdiction over the subject. It is but recently
settled that the several district and circuit courts of the
United States have jurisdiction, under the bankrupt law, of
causes arising out of proceedings in bankruptcy pending in
other districts. There had been much doubt on the subject,
but it was finally settled at the last term of this court in favor
of the jurisdiction. *Lathrop, Assignee*, v. *Drake et al.*, 91 U. S.
516. Had the decision been otherwise, as for a long period
was generally supposed to be the law, assignees in bankruptcy,
if the position of the plaintiff in error is correct, would have
been utterly without remedy to collect the assets of the bank-
rupt in districts other than that in which the bankruptcy
proceedings were pending. Neither the State courts nor the
Federal courts could have entertained jurisdiction. The Re-
vised Statutes, whether inadvertently or not, have made the
jurisdiction of the United States courts exclusive in " all mat-
ters and proceedings in bankruptcy." Sect. 711. Whether this
regulation will or will not affect the cognizance of plenary
actions and suits, it is not necessary now to determine. At all
events, the question of such cognizance must be met in this
case; and, being important in the principles involved, would

require much deliberate consideration, had it not been already in effect decided by the court.

In the opinion of the court, in *Lathrop, Assignee,* v. *Drake et al.,* it was taken for granted, and stated, that the State courts had jurisdiction (p. 518) ; but as the question was not directly involved in that case, it was more fully considered in *Eyster* v. *Gaff et al.,* 91 U. S. 521, and it was there decided that a State court is not deprived of jurisdiction of a case by the bankruptcy of the defendant, but may proceed to judgment without noticing the bankruptcy proceedings, if the assignee does not cause his appearance to be entered, or proceed against him if he does appear. If there were any thing in the Constitution to incapacitate the State courts from taking cognizance of causes after the bankruptcy of the parties, as the constitutional argument of the plaintiff in error supposes, the proceedings in bankruptcy would *ipso facto* determine them. But on this subject, in *Eyster* v. *Gaff et al.,* the court say : " It is a mistake to suppose that the bankrupt law avoids, of its own force, all judicial proceedings in the State or other courts the instant one of the parties is adjudged a bankrupt. There is nothing in the act which sanctions such a proposition." Again : " The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions. If it has, for certain classes of actions, conferred a jurisdiction for the benefit of the assignee in the circuit and district courts of the United States, it is concurrent with, and does not divest that of, the State courts." pp. 525, 526.

The same conclusion has been reached in other courts, both Federal and State; which hold that the State courts have concurrent jurisdiction with the United States courts of actions and suits in which a bankrupt or his assignee is a party. See *Samson* v. *Burton,* 4 Bank. Reg. 1 ; *Payson* v. *Dietz,* 8 id. 193 ; *Gilbert* v. *Priest,* 8 id. 159 ; *Stevens* v. *Mechanics' Savings Bank,* 101 Mass. 109 ; *Cook* v. *Whipple,* 55 N. Y. 150 ; *Brown* v. *Hall,* 7 Bush, 66 ; *Mays* v. *Man. Nat. Bank,* 64 Penn. 74. There are contrary cases, it is true, as *Brigham* v. *Claflin,* 31 Wis. 607,

*Voorhees* v. *Frisbie*, 25 Mich. 476, and others; but we think that the former cases are founded on the better reason.

The assignee, by the fourteenth section of the Bankrupt Act (Rev. Stat. sect. 5046), becomes invested with all the bankrupt's rights of action for property, and actions arising from contract, or the unlawful taking or detention of or injury to property, and a right to sue for the same. The actions which lie in such cases are common-law actions, ejectment, trespass, trover, assumpsit, debt, &c., or suits in equity. Of these actions and suits the State courts have cognizance. Why should not an assignee have power to bring them in those courts, as well as other persons? Aliens and foreign corporations may bring them. The assignee simply derives his title through a law of the United States. Should not that title be respected by the State courts?

The case is exactly the same as that of the Bank of the United States. The first bank, chartered in 1791, had capacity given it "to sue and be sued . . . in courts of record, or any other place whatsoever." It was held, in *The Bank* v. *Deveaux*, 5 Cranch, 61, that this did not authorize the bank to sue in the courts of the United States, without showing proper citizenship of the parties in different States. The bank was obliged to sue in the State courts. And yet here was a right arising under a law of the United States, as much so as can be affirmed of a case of an assignee in bankruptcy. The second bank of the United States had express capacity "to sue and be sued in all State courts having competent jurisdiction, and in any Circuit Court of the United States." In the case of *Osborn* v. *The Bank*, 9 Wheat. 738, 815, it was objected that Congress had not authority to enable the bank to sue in the Federal courts merely because of its being created by an act of Congress. But the court held otherwise, and sustained its right to sue therein. No question was made of its right to sue in the State courts.

Under the bankrupt law of 1841, with substantially the same provisions on this subject as the present law, it was held that the assignee could sue in the State courts. *Ex parte Christie*, 3 How. 318, 319; *Nugent* v. *Boyd*, id. 426; *Wood* v. *Jenkins*, 10 Met. 583.

Other analogous cases have occurred, and the same result has

been reached ; the general principle being, that, where jurisdiction may be conferred on the United States courts, it may be made exclusive where not so by the Constitution itself ; but, if exclusive jurisdiction be neither express nor implied, the State courts have concurrent jurisdiction whenever, by their own constitution, they are competent to take it. Thus, the United States itself may sue in the State courts, and often does so. If this may be done, surely, on the principle that the greater includes the less, an officer or corporation created by United States authority may be enabled to sue in such courts. Nothing in the Constitution, fairly considered, forbids it.

The general question, whether State courts can exercise concurrent jurisdiction with the Federal, courts in cases arising under the Constitution, laws, and treaties of the United States, has been elaborately discussed, both on the bench and in published treatises, — sometimes with a leaning in one direction and sometimes in the other, — but the result of these discussions has, in our judgment, been, as seen in the above cases, to affirm the jurisdiction, where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case.

When we consider the structure and true relations of the Federal and State governments, there is really no just foundation for excluding the State courts from all such jurisdiction.

The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, paramount sovereignty. Every citizen of a State is a subject of two distinct sovereignties, having concurrent jurisdiction in the State, — concurrent as to place and persons, though distinct as to subject-matter. Legal or equitable rights, acquired under either system of laws, may be enforced in any court of either sovereignty competent to hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction. Thus, a legal or equitable right acquired under State laws, may be prosecuted in the State courts, and also, if the parties reside in different States, in the Federal courts. So rights, whether legal or equitable, acquired

under the laws of the United States, may be prosecuted in the United States courts, or in the State courts, competent to decide rights of the like character and class ; subject, however, to this qualification, that where a right arises under a law of the United States, Congress may, if it see fit, give to the Federal courts exclusive jurisdiction.    See remarks of Mr. Justice Field, in *The Moses Taylor*, 4 Wall. 429, and Story, J., in *Martin* v. *Hunter's Lessee*, 1 Wheat. 334 ; and of Mr. Justice Swayne, in *Ex parte McNeil*, 13 Wall. 236.    This jurisdiction is sometimes exclusive by express enactment and sometimes by implication. If an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court.    The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief ; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws.    The two together form one system of jurisprudence, which constitutes the law of the land for the State ; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent.    The disposition to regard the laws of the United States as emanating from a foreign jurisdiction is founded on erroneous views of the nature and relations of the State and Federal governments.    It is often the cause or the consequence of an unjustifiable jealousy of the United States government, which has been the occasion of disastrous evils to the country.

It is true, the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by Chief Justice Taney, in the case of *Ableman* v. *Booth*, 21 How. 506 ; and hence the State courts have no power to revise the action of the Federal courts, nor the Federal the State, except where the Federal Constitution or laws are involved.    But this is no reason why the State courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied.

A reference to some of the discussions, to which the subject under consideration has given rise, may not be out of place on this occasion.

It was fully examined in the eighty-second number of "The Federalist," by Alexander Hamilton, with his usual analytical power and far-seeing genius; and hardly an argument or a suggestion has been made since which he did not anticipate. After showing that exclusive delegation of authority to the Federal government can arise only in one of three ways,—either by express grant of exclusive authority over a particular subject; or by a simple grant of authority, with a subsequent prohibition thereof to the States; or, lastly, where an authority granted to the Union would be utterly incompatible with a similar authority in the States,—he says, that these principles may also apply to the judiciary as well as the legislative power. Hence, he infers that the State courts will retain the jurisdiction they then had, unless taken away in one of the enumerated modes. But, as their previous jurisdiction could not by possibility extend to cases which might grow out of and be peculiar to the new constitution, he considered that, as to such cases, Congress might give the Federal courts sole jurisdiction. "I hold," says he, "that the State courts will be divested of no part of their primitive jurisdiction, further than may relate to an appeal; and I am even of opinion, that in every case in which they were not expressly excluded by the future acts of the national legislature, they will, of course, take cognizance of the causes to which those acts may give birth. This I infer from the nature of judiciary power, and from the general genius of the system. The judiciary power of every government looks beyond its own local or municipal laws, and, in civil cases, lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe. . . . When, in addition to this, we consider the State governments and the national government, as they truly are, in the light of kindred systems, and as parts of ONE WHOLE, the inference seems to be conclusive, that the State courts would have concurrent jurisdiction in all cases arising under the laws of the Union, where it was not expressly prohibited."

These views seem to have been shared by the first Congress in drawing up the Judiciary Act of Sept. 24, 1789 ; for, in distributing jurisdiction among the various courts created by that act, there is a constant exercise of the authority to include or exclude the State courts therefrom ; and where no direction is given on the subject, it was assumed, in our early judicial history, that the State courts retained their usual jurisdiction concurrently with the Federal courts invested with jurisdiction in like cases.

Thus, by the Judiciary Act, exclusive cognizance was given to the circuit and district courts of the United States of all crimes and offences cognizable under the authority of the United States; and the same to the district courts, of all civil causes of admiralty and maritime jurisdiction, of all seizures on water under the laws of impost, navigation, or trade of the United States, and of all seizures on land for penalties and forfeitures incurred under said laws.     Concurrent jurisdiction with the State courts was given to the district and circuit courts of all causes where an alien sues for a tort only in violation of the law of nations or a treaty of the United States, and of all writs at common law where the United States are plaintiffs; the same to the circuit courts, where the suit is between a citizen of the State where the suit is brought and a citizen of another State, where an alien is a party, &c.     Here, no distinction is made between those branches of jurisdiction in respect to which the Constitution uses the expression " *all cases*," and those in respect to which the term " all " is omitted. Some have supposed that wherever the Constitution declares that the judicial power shall extend to " all cases," — as, all cases in law and equity arising under the Constitution, laws, and treaties of the United States; all cases affecting ambassadors, &c., — the jurisdiction of the Federal courts is necessarily exclusive; but that where the power is simply extended " to controversies " of a certain class, — as, " controversies to which the United States is a party," &c., — the jurisdiction of the Federal courts is not necessarily exclusive.     But no such distinction seems to have been recognized by Congress, as already seen in the Judiciary Act; and subsequent acts show the same thing.     Thus, the first patent law for securing to inventors

their discoveries and inventions, which was passed in 1793, gave treble damages for an infringement, to be recovered in an action on the case founded on the statute in the Circuit Court of the United States, "or any other court having competent jurisdiction," — meaning, of course, the State courts. The subsequent acts on the same subject were couched in such terms with regard to the jurisdiction of the circuit courts as to imply that it was exclusive of the State courts; and now it is expressly made so. See Patent Acts of 1800, 1819, 1836, 1870, and Rev. Stat. U. S., sect. 711; *Parsons* v. *Barnard*, 7 Johns. 144; *Dudley* v. *Mayhew*, 3 Comst. 14; *Elmer* v. *Pennel*, 40 Me. 434.

So with regard to naturalization, — a subject necessarily within the exclusive regulation of Congress, — the first act on the subject, passed in 1790, and all the subsequent acts, give plenary jurisdiction to the State courts. The language of the act of 1790 is, "any common-law court of record in any one of the States," &c. 1 Stat. 103. The act of 1802 designates "the Supreme, Superior, District, or Circuit Court of some one of the States, or of the territorial districts of the United States, or a circuit or district court of the United States." 2 Stat. 153.

So, by acts passed in 1806 and 1808, jurisdiction was given to the county courts along the northern frontier, of suits for fines, penalties, and forfeitures under the revenue laws of the United States. 2 Stat. 354, 489. And by act of March 3, 1815, cognizance was given to State and county courts, generally, of suits for taxes, duties, fines, penalties, and forfeitures arising under the laws imposing direct taxes and internal duties. 3 Stat. 244.

These instances show the prevalent opinion which existed, that the State courts were competent to have jurisdiction in cases arising wholly under the laws of the United States; and whether they possessed it or not, in a particular case, was a matter of construction of the acts relating thereto. It is true that the State courts have, in certain instances, declined to exercise the jurisdiction conferred upon them; but this does not militate against the weight of the general argument. See *United States* v. *Lathrop*, 17 Johns. 4. See, especially, the able dissenting opinion of Mr. Justice Platt, id. 11.

It was, indeed, intimated by Mr. Justice Story, *obiter dictum*, in delivering the opinion of the court in *Martin* v. *Hunter's Lessee*,

1 Wheat. 334–337, that the State courts could not take *direct* cognizance of cases arising under the Constitution, laws, and treaties of the United States, as no such jurisdiction existed before the Constitution was adopted.   This is true as to jurisdiction depending on United States authority.; but the same jurisdiction existed (at least to a certain extent) under the authority of the States.   Inventors had grants of exclusive right to their inventions before the Constitution was adopted, and the State courts had jurisdiction thereof.   The change of authority creating the right did not change the nature of the right itself. The assertion, therefore, that no such jurisdiction previously existed, must be taken with important limitations, and did not have much influence with the court when a proper case arose for its adjudication.   *Houston* v. *Moore*, decided in 1820, 5 Wheat. 1, was such a case.   Congress, in 1795, had passed an act for organizing and calling forth the militia, which prescribed the punishment to be inflicted on delinquents, making them liable to pay a certain fine, to be determined and adjudged by *a court-martial*, without specifying what court-martial.   The legislature of Pennsylvania also passed a militia law, providing for the organization, training, and calling out the militia, and establishing courts-martial for the trial of delinquents.   The law in many respects exactly corresponded with that of the United States, and, as far as it covered the same ground, was for that reason held to be inoperative and void.   Houston, a delinquent under the United States law, was tried by a State court-martial; and it was decided that the court had jurisdiction of the offence, having been constituted, in fact, to enforce the laws of the United States which the State legislature had re-enacted.   But the decision (which was delivered by Mr. Justice Washington) was based upon the general principle that the State court had jurisdiction of the offence, irrespective of the authority, State or Federal, which created it.   Not that Congress could confer jurisdiction upon the State courts, but that these courts might exercise jurisdiction on cases authorized by the laws of the State, and not prohibited by the exclusive jurisdiction of the Federal courts.   Justices Story and Johnson dissented; and, perhaps, the court went further, in that case, than it would now.   The act of Congress having

institured courts-martial, as well as provided a complete code for the organization and calling forth of the militia, the entire law of Pennsylvania on the same subject might well have been regarded as void. Be this as it may, it was only a question of construction; and the court conceded that Congress had the power to make the jurisdiction of its own courts exclusive.

In *Cohens* v. *Virginia*, 6 Wheat. 415, Chief Justice Marshall demonstrates the necessity of an appellate power in the Federal judiciary to revise the decisions of State courts in cases arising under the Constitution and laws of the United States, in order that the constitutional grant of judicial power, extending it to all such cases, may have full effect. He says, " The propriety of intrusting the construction of the Constitution and laws, made in pursuance thereof, to the judiciary of the Union, has not, we believe, as yet, been drawn in question. It seems to be a corollary from this political axiom, that the Federal courts should either possess exclusive jurisdiction in such cases, or a power to revise the judgment rendered in them by the State tribunals. If the Federal and State courts have concurrent jurisdiction in all cases arising under the Constitution, laws, and treaties of the United States, and if a case of this description brought in a State court cannot be removed before judgment, nor revised after judgment, then the construction of the Constitution, laws, and treaties of the United States is not confided particularly to their judicial department, but is confided equally to that department and to the State courts, however they may be constituted."

See the subject further discussed in 1 Kent's Com. 395, &c., Sergeant on the Const. 268; 2 Story on the Const., sect. 1748, &c.; 1 Curtis's Com., sects. 119, 134, &c.

The case of *Teal* v. *Felton* was a suit brought in the State court of New York against a postmaster for neglect of duty to deliver a newspaper under the postal laws of the United States. The action was sustained by both the Supreme Court and Court of Appeals of New York, and their decision was affirmed by this court. 1 Comst. 537; 12 How. 292. We do not see why this case is not decisive of the very question under consideration.

Without discussing the subject further, it is sufficient to say,

that we hold that the assignee in bankruptcy, under the Bankrupt Act of 1867, as it stood before the revision, had authority to bring a suit in the State courts, wherever those courts were invested with appropriate jurisdiction, suited to the nature of the case.                                        *Judgment affirmed.*