## Case No. 6,835.

### HUDSON v. SCHWAB et al.

[18 N. B. R. 480; 26 Pittsb. Leg. J. 140.] [1]

Circuit Court, E. D. Michigan. Nov. 12, 1878.

JURISDICTION IN BANKRUPTCY—POWER OF CIRCUIT COURT TO ENJOIN STATE COURT.

Upon a bill filed by an assignee in bankruptcy, the circuit court has power to enjoin the prosecution of an action of trover in a state court against the marshal for seizing the property of a third person under his warrant in bankruptcy.

On motion for an injunction. Complainant [Joseph L. Hudson], who was the assignee in bankruptcy of Schott & Feibish, filed his bill to restrain the defendant [Samuel] Schwab from the further prosecution of an action of trover against the marshal of this district for taking possession, under a warrant in bankruptcy, of certain goods claimed to belong to him. The bill also prayed that the sale of these goods by Schott & Feibish to Schwab, under which the latter claimed to be entitled to them, be decreed to be fraudulent and void as against the complainant and the creditors of Schott & Feibish.

H. C. Wisner, M. E. Crofoot, and G. V. N. Lothrop, for complainant.

Don M. Dickinson, for defendants.

BROWN, District Judge. This case turns upon the jurisdiction of the bankrupt court to enjoin parties from prosecuting a suit in trover in the state court against the marshal, for seizing property claimed by a third person under his warrant to take possession of the goods of the bankrupt. The question is certainly one of great importance, the more so as it involves a possible conflict with the state courts, in several of which similar actions, arising from seizures under the same warrant, are now pending. I had occasion recently to decide in the case of Evans v. Pack [Case No. 4,566] that this court had no power to enjoin the prosecution of an action of trespass or trover in the state court, brought against the marshal for seizing the property of a third party upon an execution at common law. It was then suggested that if the marshal had been acting under a warrant in bankruptcy, a bill by the assignee might be maintained under the general power given by the bankrupt law [of 1867 (14 Stat. 517)] to administer the estate of the bankrupt, to ascertain and liquidate the liens and other specific claims thereon, and to adjust the various priorities and the conflicting interests of all parties. The case then under consideration was treated as falling clearly within the inhibition of Rev. St. § 720, denying to the federal courts the power of staying proceedings in the state courts;

but it was thought that such a bill as this might fall within the exception noted in that section, of "cases authorized by a law relating to proceedings in bankruptcy." Indeed, I had supposed the numerous adjudications of circuit and district judges throughout the country had settled the law in that regard, and no doubt remained of the power of the district court to wind up the entire estate of the bankrupt, and to determine every question connected therewith. It is claimed, however, with great earnestness, that the supreme court has never lent its sanction to the doctrine, and that in the recent cases of Eyser v. Gaff, 91 U. S. 521, and Claflin v. Houseman, 93 U. S. 130, it has expressed its disapprobation of all attempts to interfere with the jurisdiction of the state courts in deciding questions arising incidentally in connection with bankrupt cases. Indeed, counsel for the defendant did not lay so much stress upon the inability of the court to enjoin in this particular case, as upon the want of power in all cases to interfere with parties litigating in state courts.

There are undoubtedly certain expressions used by the learned judge who delivered the opinion in Eyser v. Gaff [supra] which lend some support to the inference drawn by defendant's counsel, but the case itself decided only that a suit for the foreclosure of a mortgage in a state court may proceed to a decree, notwithstanding the bankruptcy of the mortgagor, pending the proceedings, and that the state court is not bound to take notice of the adjudication unless the assignee appears and asks to be made a party. It may be said to establish the proposition that state courts may lawfully proceed with all suits against the bankrupt or his estate, notwithstanding the bankruptcy. It does not decide that the bankrupt court has not the power in its discretion to restrain the plaintiff from prosecuting such suits when, in the opinion of the court, they may have been collusively or improperly begun, or may throw an obstacle in the way of the prompt settlement of the estate. The case of Claflin v. Houseman [supra] decides nothing except that an assignee might, before the late revision, resort to the state courts for the collection of the assets of the bankrupt. Whether this can be done under Rev. St. § 711, is left an open question. It may be remarked, in this connection, that Mr. Justice Bradley, who delivered the opinion in this case, in the case of Goddard v. Weaver [Case No. 5,495], expressed no doubt of the power of the district court to stay a sheriff in proceedings to sell under a mortgage foreclosure or even to set aside the sale, although in that particular case he refused to disturb it. In delivering the opinion, he observes: "I cannot regard the sheriff's acts as void in law nor as voidable or subject to control, except upon cause shown in a court having bankrupt jurisdiction. The bankrupt court is the appropriate court to investigate where any ques-

[1] [Reprinted from 18 N. B. R. 480, by permission. 26 Pittsb. Leg. J. 140, contains only a partial report.]

tion is made as to the validity of the judgment, and proceedings under it may be restrained." If this power does not exist, it is not easy to see how the bankrupt law can be effectually administered. Mortgages may be foreclosed without our assent, and the assignee compelled to pay off the mortgage, or bid the property in at the sale without opportunity for negotiation or power to realize something for the estate by private sale. He can only contest fraudulent claims by appearing in the state court, and where such claims are numerous may be driven from one county to another to defend claims which might all be adjusted in a single suit. The settlement of an estate may be delayed by frivolous appeals, or by new trials, or wasted in fruitless litigation. The assignee may rely upon defences peculiar to the bankrupt law and not available to him in the state courts. Should such defences be improperly overruled, and it is safe to assume that such cases will occur (see Bromley v. Goodrich, 40 Wis. 131), the assignee is remediless except by an appeal to the supreme court of the United States, involving tedious delays and great expense. As observed by the superior court of New York, in Mills v. Davis [35 N. Y. Super. Ct. 355], "the other powers of a bankruptcy court over an estate would accomplish little in dividing the estate among the creditors if the court did not gain the power to save it from dispersion or illegal transfer as soon as the proceeding in bankruptcy began." It was held in this case that where a sheriff had collected money upon an execution, and was afterward enjoined by the district court from "interfering with or disposing of the bankrupt's property," this injunction was a sufficient answer for the sheriff to make to an order from the plaintiff requiring him to pay over the money. The necessity for an occasional interference with actions against the bankrupt's estate in the state courts is forcibly put by Mr. Justice Story, in the case of Ex parte Christy, 3 How. [44 U. S.] 292–319.

The nature and extent of the jurisdiction of the district court as a court of bankruptcy was first considered in this case, and the opinion of the court has afforded a text for most of the subsequent discussions upon the proper functions and office of a bankrupt law. The case was an application for a writ of prohibition to the district court upon the ground it had transcended its powers in decreeing the invalidity of a sale by a state court upon the foreclosure of a mortgage. In affirming the power of a district court in this regard, Mr. Justice Story delivered an exhaustive and learned disquisition, and in the course of his opinion remarks: "We entertain no doubt that under the provisions of the sixth section of the act of 1841 [5 Stat. 445] the district court does possess full jurisdiction to suspend or control such proceedings in the state courts, not by acting on the courts over which it possesses no authority,

but by acting on the parties through the instrumentality of an injunction or other proceedings in equity, upon due application made by the assignee, and a proper case being laid before the court requiring such interference. Such a course is very familiar in courts of chancery, in cases where a creditor's bill is filed for the administration of the estate of a deceased person, and it becomes necessary or proper to take the whole assets into the hands of the courts, for the purpose of collecting and marshalling the assets, ascertaining and adjusting conflicting priorities and claims, and accomplishing a due and equitable distribution among all the parties in interest in the estate. Similar proceedings have been instituted in England in cases of bankruptcy, and they were, without doubt, in the contemplation of congress, indispensable to the practical working of the bankrupt system. But because the district court does possess such a jurisdiction under the act, there is nothing which requires that it should in all cases be absolutely exercised. On the contrary, where suits are pending in the state courts, and there is nothing in them which requires the equitable interference of the district court to prevent any mischief or wrong to other creditors under the bankruptcy, or any waste or misapplication of the assets, the parties may well be permitted to proceed in such suits and consummate them by proper decrees and judgments." These remarks, however, were but dicta.

The direct question of the power of the district court to interfere and set aside proceedings in the state courts came up in Peck v. Jenness. 7 How. [48 U. S.] 612. To an action of assumpsit against the bankrupt in a state court, commenced by attachment, the assignee, who was admitted to defend, pleaded an order of the district court in bankruptcy, upon his petition that the attachment was not a valid lien, decreeing that the sheriff deliver the goods over to him or account for their value. It will be observed that Mr. Justice Story had retired from the bench, and that its personnel had otherwise changed to some extent, since the decision in Ex parte Christy [supra]. The court held, that the suit pending before the court of common pleas was not a suit or proceeding in bankruptcy, and, although the plea of bankruptcy was interposed by the defendants, the court was as competent to entertain and judge of that plea as any other. "It had full and complete jurisdiction over the parties and the subject matter of the suit; and its jurisdiction had attached more than a month before any act of bankruptcy was committed." . . . "It follows, therefore, that the district court had no supervisory power over the state court, either by injunction or by the more summary method pursued in this case, unless it has been conferred by the bankrupt act. But we cannot discover any provision in that act which limits the jurisdiction of the state courts, or confers any power on

the bankrupt court to supersede their jurisdiction, to annul or anticipate their judgments, or wrest property from the custody of their officers." . . . "It confers no authority on the district court to restrain proceedings therein by injunction or any other process, much less to take the property out of its custody or possession with a strong hand." This case is obviously irreconcilable with the dicta of Mr. Justice Story in Ex parte Christy, and was so treated by the supreme court in Carroll v. Carroll, 16 How. [57 U. S.] 275–287. The remarks of the court in that connection, with regard to their dicta, are worthy of quotation here, and may well be borne in mind in reading the more recent decisions above cited: "And, therefore, this court, and other courts organized under the common law, has never held itself bound by any part of an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties." Quoting from the opinion of Mr. Chief-Justice Marshall in Cohens v. Virginia, 6 Wheat. [19 U. S.] 399: "It is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent; other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." But the case of Peck v. Jenness [supra] must be considered as establishing the proposition that, under the act of 1841, this court had not the power to enjoin or interfere with parties litigant in the state courts. The language of that act, however, was comparatively restricted. It vested in the district court jurisdiction "in all matters and proceedings in bankruptcy arising under this act," extending such jurisdiction "to all cases and controversies in bankruptcy arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to all cases and controversies between such creditor or creditors and the assignee of the estate, whether in office or removed, and to all acts, matters, and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt and the close of the proceedings in bankruptcy." The act of 1867, however, is much broader and more explicit. The phraseology of the first section is, to a large extent, taken bodily from the language of Mr. Justice Story, in Ex parte Christy. It extends not only to the cases enumerated in the act of 1841, but "to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of the liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all parties; to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties and due distribution of the assets among all the creditors."

The argument of the defendant in this case derives some support from the fact that congress did not adopt the whole language of the learned judge in that case, wherein he enumerates among the powers of the district court the "preventing, by injunction, or otherwise, any particular creditor or person, having an adverse interest, from obtaining an unjust and inequitable preference over the general creditors, by improper use of his rights or his remedies in the state tribunals;" but that omission has certainly not been treated by the circuit and district courts generally as involving a negative pregnant. It is to be regretted that the power of the district court, under the act of 1867, was not, in the early administration of the law, taken up and fully discussed in the light of these opinions. Jurisdiction to enjoin officers of the state courts and parties litigant therein was generally assumed to exist, even before the revision, and the few cases in which it was denied have been disregarded or overruled. In the cases of In re Campbell [Case No. 2,349] and In re Burns [Id. 2,182], Judge McCandless denied the authority of the district courts to issue injunctions to the state courts, or to parties litigating before them, relying upon Peck v. Jenness, 7 How. [48 U. S.] 612. He announced that Justice Grier, who delivered the opinion in Peck v. Jenness, concurred in this case; but in the subsequent case of Irving v. Hughes [Case No. 7,076] the question again came before Justice Grier, sitting with Judge Cadwallader in the Eastern district of Pennsylvania. The court held that where an insolvent debtor had given a warrant of attorney, under which judgment had been rendered in a state court, and an execution levied upon his stock in trade, the bankrupt law gave to the court jurisdiction to prohibit such creditor by injunction from proceeding further under such execution. The court undertook to distinguish the former cases, arising in the Western district, on the ground that they involved questions which the courts of the state were fully competent to decide. "Here, on the contrary, the question is not fully cognizable under the jurisprudence or legislation of the state." Remarking upon the case of Peck v. Jenness, and the act of 1793 [1 Stat. 334] prohibiting injunctions against state courts, the court observes: "But in the present case, if the act of 1793 would otherwise have been applicable, the present bankrupt law would exclude its application so far as the present question is concerned. The state court cannot be enjoined; but the litigant in it may be restrained from doing what would frustrate or impede the jurisdiction expressly conferred by the bankrupt

act." The opinion seemed to have been based upon the ground that the defence was one peculiar to the bankrupt act, of which the state court could not take cognizance. The case seems to be, however, a departure from the rule laid down in Peck v. Jenness, that in no case could the state courts or parties litigant therein be interfered or enjoined, and it possesses additional significance from the fact that the same judge delivered the opinion in both cases. In Re Schnepf [Case No. 12,-471], Judge Benedict enjoined the sheriff of a state court from proceeding to sell under an execution certain personal property levied upon prior to the filing of the petition in bankruptcy, and the assignee was directed to take possession and sell at private sale. The power to enjoin was conceded by the judgment creditor, and consequently was not discussed, although the judge intimated an opinion that such power seemed necessary to a proper administration of the bankrupt law. In Re Bernstein [Id. 1,350], Judge Blatchford enjoined a sheriff from selling goods upon an execution, under the 40th section, though the order was subsequently modified so as to permit a sale, directing the sheriff to hold the proceeds subject to the order of the bankrupt court. In Pennington v. Lowenstein [Id. 10,938], a demurrer to a bill, praying that the sheriff be enjoined from paying the proceeds of certain property to the plaintiffs in an attachment, and that he be required to pay the same over to the assignee in bankruptcy, was overruled. The question of power was not discussed.

See, also, as to the power to enjoin, In re Bowie [Id. 1,728]; Jones v. Leach [Id. 7,475]. In Re Wallace [Id. 17,094], the power to enjoin was asserted by Judge Deady as necessary to preserve and distribute the estate of the bankrupt among the creditors. In Bill v. Beckwith [Id. 1,406], Mr. Justice Swayne quoted with approval the language of Mr. Justice Story in Ex parte Christy, 3 How. [44 U. S.] 292, and remarked: "Its success (that of the bankrupt law) was dependent upon the national machinery being made adequate to the exigencies of the act. Prompt and ready action, without heavy charges or expenses, could be safely relied on where the whole jurisdiction was confined to a single court in the collection of assets, in the ascertainment and liquidation of liens and other specific claims thereon." In Re Kerosene Oil Co. [Case No. 7,725], Judge Benedict enjoined the foreclosure of a mortgage in a state court upon the petition of the assignee. In Re Fuller [Id. 5,148], Judge Deady again enjoined a creditor from enforcing a judgment in a state court against the property of the bankrupt. This was, however, upon the petition of the bankrupt. In Re Davis [Id. 3,620], certain creditors were enjoined, upon petition of the assignee, from foreclosing a mortgage in the state court. The injunction was subsequently dissolved, "with the reservation to this court

of full power and authority to interfere and control or arrest the proceedings, whenever it shall appear expedient for the interests of all concerned that it should exercise the power given it by law, to assume the exclusive administration of this portion of the bankrupt's estate." The learned judge held that the jurisdiction of the ordinary tribunals was not taken away by the mere force of adjudication, but that the bankruptcy court had jurisdiction to suspend such proceedings by acting upon the party. In Re Mallory [Id. 8,991], a creditor and sheriff were enjoined by the district court from selling the property upon execution. The question here first received an elaborate discussion; all the prior cases were cited, and the jurisdiction of the court fully sustained. This case was affirmed on appeal by Mr. Justice Field, who expressed his unqualified approval of the reasoning of the district judge. The same decision was made in Re Lady Bryan Min. Co. [Id. 7,980]. In Re Clark [Id. 2,801], Judge Woodruff held that the district court had ample power to restrain the claimant of a lien obtained by collusion with the bankrupt from proceeding elsewhere to enforce the lien. "The power to control the creditors in this respect, I think, is clearly given. Two considerations illustrate the importance of the power, which are especially applicable to liens by attachment: 1. Without such power there is no adequate protection to other creditors against collusion between the bankrupt and the claimant, not even aided by the authority given to the assignee to defend; and 2. The early settlement of the estate may sometimes require that the court in bankruptcy should take the determination of claims which are in dispute into its own hands." In Markson v. Heaney [Id. 9,098], Judge Dillon affirmed the power of the district court to enjoin the prosecution of a foreclosure suit begun after the proceedings in bankruptcy were instituted.

Such was the state of the authorities when the Revised Statutes were passed, and the important exception was incorporated in section 720, of "cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." This literally would include only those cases where the power to stay proceedings was expressly given by the bankrupt law. On referring to this law, we find but two sections to which this language could possibly apply: 1. Section 40, Rev. St. § 5024, by which power is given to the court by injunction to restrain the debtor and any other person in the meantime from making any transfer or disposition of any part of the debtor's property. This evidently refers to preliminary injunctions, which expire with the adjudication, and has no reference to injunctions against parties litigant in the state courts. 2. Section 21, Rev. St. § 5106, providing that any suit or proceeding by a creditor shall, upon application of the bankrupt, be stayed to

await the determination of the court in bankruptcy on the question of discharge. This confers no express power to enjoin. The bankrupt law is the law of the land, and just as binding on the citizens and courts of the several states as are the state laws. Claflin v. Houseman, 93 U. S. 130, 136, 137. This stay of proceedings may be, and usually is, granted by the state court itself upon application of the bankrupt. Such has been the practice in this state; but conceding that this court may by injunction stay such proceedings, it can only be done under this section upon the application of the bankrupt, and the section has no application to injunctions granted upon the petition of the assignee. It was not and could not be claimed as authorizing injunctions in the cases above cited. But, obviously, this section was inserted in the statute for some purpose. It was intended to refer to some power which had been claimed or exercised under the bankrupt law to issue such injunctions, and it seems probable that congress thereby intended to recognize these decisions as settling the power to interfere with state courts wherever it became necessary in the proper administration of the bankrupt law. Since the revision, the decisions have been uniformly in favor of such jurisdiction. In Re Atkinson [Case No. 606], the sheriff of a state court was attached for violating an injunction, issued from the district court, in selling property seized upon execution. In Re Ulrich [Id. 14,328], Judge Blatchford enjoined certain creditors from prosecuting suits against the bankrupt in the state of Illinois. The prior authorities were fully considered, and the learned judge apparently entertained no doubt of his jurisdiction. This ruling he repeated in the following case of U. S. v. Bancroft [Id. 14,513]. In re Dillard [Id. 3,912], Judge Bond, in sustaining an injunction to restrain the commissioners of a state court from selling real estate, observes: "It has never been questioned that the bankrupt court could take possession of the property of a bankrupt incumbered by the liens of judgment creditors, and the fact that process had been had to enforce those liens can make no difference. It is not a question of jurisdiction or of right, but of discretion. In Sutherland v. Lake Superior Ship Canal, Railroad & Iron Co. [Id. 13,643], Judge Emmons fully sustained the power of this court to arrest litigation in the state courts, observing, with his accustomed vigor of language, "The remaining domain of the state tribunals which cannot be interfered with is so trivial and exceptional as to leave the inference a strong one that it was not intended to be protected by congress." See, also, to the same effect, In re Shuey [Id. 12,821]; In re Citizens' Sav. Bank [Id. 2,735]; Zahm v. Fry [Id. 18,198]; Fowler v. Dillon [Id. 5,000]; Walker v. Seigel [Id. 17,085]. In Hewett v. Norton [Id. 6,441], Judge Woods affirmed the action of the district

court in restraining parties to an action from proceeding to take property out of the possession of the assignee in bankruptcy. In Re Whipple [Id. 17,512], Judge Blodgett enjoined complainants in a creditor's bill from further proceeding in the state courts. And, finally, in Re Duryea [Id. 4,196], proceedings for foreclosure in a state court were restrained by the injunction of the district court.

While, if this were an original question, I should feel very grave doubts as to my power to enjoin this suit, and while the law cannot be said to be absolutely settled by any decision short of the court of last resort, the general concurrence of co-ordinate tribunals throughout the country, in asserting this power, fully justifies me in assuming it to exist. It would be simply presumptuous in this court to set itself against such an overwhelming current of authority. In the case under consideration, the action against the marshal is not in replevin, but in trover, so that no question of actual possession arises. This, however, seems to me to make no difference in principle. If judgments are rendered against the marshal, the assets of the estate are diminished by the amount of these judgments. In the case of Kellogg v. Russell [Id. 7,666], an injunction was granted by Judge Woodruff under precisely similar circumstances. The main purpose of the bill is, as he observes, to set aside alleged fraudulent conveyances to the defendant. This is the fundamental ground and purpose of the suit, and the injunction sought is purely incidental and conservative. Main v. Glen [Id. 8,973] is also upon all fours with the case under consideration. Jurisdiction to enjoin an action in the nature of trespass against the marshal was put upon the ground that the bankruptcy court had "taken the property, and it alone should have the right to determine the question to whom it belonged." It appears, too, that doubts had been expressed by the state courts of their competence to entertain a defence under the bankrupt law. The bill, though in the circuit court, is ancillary and in aid of the jurisdiction of the district court (which by Rev. St. § 711. subd. 6, and section 563, is exclusive in all cases in bankruptcy), and may be maintained regardless of the citizenship of the parties. As the question of jurisdiction was the only one argued, I do not deem it necessary to discuss at length as to whether this is a proper case for the exercise of a discretion to interfere. It is understood, however, that there are six suits pending in four different courts against the marshal, under practically the same state of facts. This would seem to make it a proper case for transferring the litigation to this court. The motion for an injunction is granted.

[NOTE. The defendant moved for an order to show cause why a mandamus should not be issued commanding and enjoining the vacation of the above injunction, but the motion was

denied by the supreme court. in an opinion delivered by Mr. Chief Justice Waite, on the ground that mandamus was not the proper remedy, saying: "Mandamus cannot be used to perform the office of an appeal or writ of error. Ex parte Loring. 94 U. S. 418; Ex parte Flippin, Id. 350. The circuit court had jurisdiction of the action and of the parties, for the purpose of trying the title of the assignee to the goods. The injunction was granted in the course of the administration of the cause. * * * The question arose in the regular progress of the cause, and if decided wrong, an error was committed, which, like other errors, may be corrected on appeal after a final decree below." Ex parte Schwab, 98 U. S. 240.]