(32 Misc. Rep. 353.)

### SILBERSTEIN v. STAHL et al.

(Supreme Court, Special Term, New York County.   August, 1900.)

1. BANKRUPTCY—RETURN OF GOODS SOLD—PREFERENCE.
    Where a debtor, less than one month before being adjudged a bankrupt, transferred property to the creditor from whom he purchased it, in full satisfaction of his debt of nearly double the value of the property, the transfer will be set aside as a preference at the suit of the trustee in bankruptcy, under Bankr. Act 1898, §§ 60, 70, vesting title to the bankrupt's estate in the trustee, and providing that he may avoid a preference given within four months before filing the petition, if the person receiving payment had reasonable cause to believe it was intended as a preference.

2. SAME—RECOVERY BY TRUSTEE—STATE COURT—JURISDICTION.
    The supreme court of New York has jurisdiction of a suit by a trustee in bankruptcy to set aside a conveyance of property to one creditor and to recover the property, which conveyance is charged to constitute a preference, and to be void under Bankr. Act 1898.

Action by Edward A. Silberstein, as trustee in bankruptcy of Marcus Rosen, against Jacob Stahl and others, to recover property alleged to have been preferentially transferred. Judgment for plaintiff.

Shiland & Honeyman (H. B. Shoemaker, of counsel), for plaintiff.
Wahle & Stone (C. G. F. Wahle, of counsel), for defendants.

RUSSELL, J.   The bankrupt, Rosen, carried on a cigar business at Denver, Colo.; purchasing from the defendants Jacob Stahl, Jr., & Co., at New York, as well as from other wholesalers.   On the 1st day of December, 1898, through the efforts of the defendant Edward Seifert, a member of the creditor firm, he transferred to the defendants all of the cigars, unsold, which he had received from the defendants, amounting in value to $693.25, in agreed satisfaction of the defendants' entire claim against Rosen, amounting to $1,242. This transaction culminated a correspondence between the defendants in New York and Rosen in Denver, plainly showing the anxiety of the defendants to collect on the line of credit which had been extended by them to Rosen, and anxious perception of his neglect and inability to discount his bills for goods purchased from them; and it evinced a willingness on their part to surrender over 40 per cent. of their claim in order to secure the remainder, even though that security was the receipt back of their own goods with the risk of being able to sell them to other customers for cash at the price stated.   There can be no doubt that the facts indicate a reasonable cause to believe Rosen not only unable to pay his obligations as they matured, but also unable to pay them by dedication of his entire assets to the payment of his obligations, were time given him to turn those assets into money under circumstances which would enable him to realize the most.   Capable business men do not relinquish a large percentage of a claim against a solvent debtor to take in kind the merchandise sold the debtor by them as the best bargain they can make for a release of their claim.   And if it is correct, as the defendants claim, to say that Rosen was limited in

his power of disposition of the goods sold to him by the defendants, so that at any time the defendants could resume possession of the remaining stock for the more efficient selling of the particular brands they manufactured, the inquiry becomes more acute as to why, under the exercise of an undoubted right to take their goods back, they should be compelled to surrender their claim for the goods sold by Rosen to others, and which they could not reclaim. The inferences to be drawn from the circumstances of the dealings, correspondence, and settlement are strengthened by the interviews which took place November 30, 1898, and December 1, 1898, between Seifert, other creditors, and the bankrupt. The consciousness of Rosen's insolvency permeated the conversations and acts of all of the participants. That consciousness was entirely justified by the facts. Rosen was then insolvent, and at the time the transfer was made to the defendants, instead of preferring one creditor, should have yielded his entire property to the payment of his just debts, so far as that property would go, and thus alone have acted in consonance with the fundamental principle upon which the bankruptcy act of 1898 is founded. The counsel for the defendants ingeniously tries to pervert the application of the bankruptcy act to the case under consideration by the endeavor to distinguish between a creditor seeking a preference and a former owner simply striving to regain his own. The defendants carefully avoid the dilemma of maintaining a right of rescission and restoration of the remaining goods unsold by Rosen on account of a fraud on the part of Rosen in stating his responsibility, which would justify rescission, for that would confess a knowledge, at the time the goods were taken back by the defendants, that Rosen was insolvent, and unable to pay, as the very foundation of their claimed right to rescind. Accordingly, an ingenious, if not ingenuous, theory is advanced by testimony and argument that Rosen was quasi debtor and quasi agent. He is claimed to have been the debtor so long as the creditors wished him to be so, and only agent after they chose to terminate his right to sell the goods they had sold him. Their theory is, as suggested by the testimony of the defendant Seifert, that Rosen was to introduce their brands of cigars into the distant regions contiguous to Denver, through the form of a sale, with the right to the defendants to terminate his acting for them in case he was not active or expert enough to place the goods in the surrounding territory to a sufficient extent to satisfy them. There was no reservation of title to the goods. There was an absolute line of credit extended to Rosen, and an absolute right on the part of the defendants to enforce their claim against him, not only for goods which he sold, and thus could not return, but also for goods which he had on hand, and which the defendants did not care to take back. Reasonably construed, the understanding was, simply, that the defendants had a right to refuse further deliveries at any time when they saw fit. If any additional force is claimed, so that it is urged there was an inherent right to reclaim the unsold goods in the possession of Rosen, this court could not find the facts with the defendants, either upon the evidence or under the pleadings. The answer was verified by

this same witness, Seifert. No claim is made in that answer of any such reservation of title, and the distinct affirmative allegation is made, as to the apparent defense which is relied upon in regard to the facts of the original sales to Rosen, that the cigars were actually sold outright, but that it was not Marcus Rosen, and was his mother, Emile Rosen, who purchased them. It is also quite evident that the culminating cause of the transfer back to the defendants of the stock unsold by Rosen was his inability to pay his obligations in full, and not any choice on the part of the defendants of another agent endowed with greater efficiency in the display and disposition of their brands of cigars.

Nor can I agree with the learned counsel for the defendants that there is a wide distinction between the bankruptcy act of 1867 and that of 1898 as to the power to bring actions in the supreme court of this state. His argument is that under the bankruptcy act of 1867 preferences to creditors having reasonable cause to believe the debtor insolvent were declared fraudulent and void, and therefore the title to the property transferred of course vested in the assignee in bankruptcy, who, having such title, could maintain in a court of general jurisdiction an action at law or in equity to recover that property; but that, there being no such declaration in the bankrupt act of 1898, the title never came to the trustee, who cannot, therefore, assert his claim to the goods as a trustee owner, but is remitted to some indefinite form of action in the United States district or circuit court, which alone has special jurisdiction of such a controversy. The supreme court of the state of New York is a court of general jurisdiction, which has the right to entertain actions in the determination of controversies over property, and was recognized as having jurisdiction to render judgment setting aside preferences given in hostility to the bankruptcy act of 1867. It was also held that no exclusive jurisdiction was given the courts of the United States. Claflin v. Houseman, 93 U. S. 130, 23 L. Ed. 833; Ansley v. Patterson, 77 N. Y. 156. The right, under the bankruptcy act of 1898, of the trustee to bring an action in the supreme court of this state to set aside a preference of this character is recognized. Crooks v. Bank, 46 App. Div. 335, 61 N. Y. Supp. 604. Section 70 of the bankrupt act of 1898 provides that the trustee is vested with the title of the bankrupt to his estate. Section 60 provides that the trustee may avoid a preference given within four months before the filing of the petition, if the person receiving the payment had reasonable cause to believe it was intended to give a preference. It would be a very narrow construction of these provisions to hold that the trustee might avoid a preference, and yet take no title to the property transferred by such preference. The moment he avoided the preference given, that moment, if his act was justified by the facts, the transfer ceased to be effective, and the property transferred dropped into the bankrupt's estate, which passed over to the trustee, the same as now a receiver of an insolvent debtor may avoid the fraudulent acts of his debtor, and recover the property transferred, which he could not do prior to the statute of 1858. It is difficult to perceive where the title to the property would go upon

the avoidance of the transfer if it did not go to the trustee. It could hardly pass back to the bankrupt debtor, and be held by him as unassigned property. The statute itself, by its own operation, transfers all the property interests of the debtor to the trustee. The title could not be given to the participating creditors who were preferred, for their title was avoided by the act of the trustee for just cause. The bankrupt law of 1898 would be very ineffective to protect the rights of creditors generally, and secure equality of distribution of the assets of an insolvent debtor, if each creditor who was lucky enough to find some of his goods on hand could take them, thus disposing of all the stock which was available for payment of any debts, and leaving the creditors whose merchandise had been entirely parted with by the debtor wholly unprotected. It would be equally as ineffective if the insolvent debtor could transfer his property to favored creditors, under the claim that the trustee took no title to such property, and the trustee be deprived of ordinary recourse to the courts for remedial justice in the effort to secure a just and equal distribution of all the property of the insolvent debtor remaining on hand, or that fraudulently or preferentially transferred shortly before the bankruptcy, and at a time when the insolvent knew the day was close at hand when he could have no longer even the apparent right to dispose of his property. As the property received by the defendants has been disposed of by them, judgment is directed in favor of the plaintiff against the defendants for $693.25, with interest from November 30, 1898, and costs. Judgment for plaintiff against defendants for $693.25, with interest from November 30, 1898, and costs.

Judgment for plaintiff, with costs.