## Quinn et al. v. Gutentag

*Henry A. MacDonald,* of *Gunnison, Fish, Gifford & Chapin,* for petitioner.

*S. Y. Rossiter* and *Robert Chase,* contra.

KITTS, P. J., July 19, 1943.—This case, together with five kindred cases growing out of the same transaction, is now before the court for disposition of a rule to open judgment following an amicable action in ejectment. All the cases are so interrelated that a decision in one case necessarily rules them all and while we will discuss the instant case we will make separate orders in the five kindred cases.

It appears that the landlords, Terrence D. Quinn and Max Loeb, expressed a desire to make certain improvements, redecorating, painting, plastering, finishing the floors, correction of plumbing defects, and certain other renovations or repairs to their tenement house situate at 923-25 French Street in the City of Erie, Pa., and thereupon served notice upon the tenant, Irwin Gutentag, to vacate or to entirely quit and remove from the said premises at the expiration of his lease. The current rent had been paid in full and upon the tenant's refusal so to vacate the premises an amicable action in ejectment was instituted. Petition to open judgment was filed, testimony taken, and after argument of coun-

sel we find that the record raises an important question of fact, to wit: Do the contemplated repairs, redecorating, refinishing, or, in other words, whatsoever the landlord has proposed to do in and about the premises, constitute a substantial altering or remodeling in a manner which cannot practicably be done with the tenant in occupancy?

Prior to the passage of the Emergency Price Control Act of January 30, 1942, 56 Stat. at L. 23, by the Congress of the United States and the promulgation of the Maximum Rent Regulations by the Office of Price Administration pursuant thereto, it is plainly obvious that the landlord, at the expiration of his lease, would have had the unquestionable right of possession of the premises, but by reference to section 6 (a) 5 of such regulations we find the following language:

"(5) The landlord seeks in good faith to recover possession for the immediate purpose of demolishing the housing accommodations or of substantially altering or remodeling it in a manner which cannot practically be done with the tenant in occupancy and the plans for such alteration or remodeling have been approved by the proper authorities, if such approval is required by local law."

In reality, the record raises two questions: First, are the contemplated improvements a substantial altering or remodeling of the premises? second, if such contemplated improvements are a substantial altering or remodeling of the premises, can this work practicably be done with the tenant in occupancy?

Should it be determined that such improvements, redecorating, repairs, or whatsoever the landlord has offered or proposed to do, are not a substantial altering or remodeling, then the whole case of ejectment falls.

In the case of Noralond v. Osterberg, 25 Erie 289, we held (p. 292):

"Of course, a state can create judicial tribunals, with full and adequate power to hear and determine con-

troversies between parties brought before them, to enter final judgments and to issue process to carry them into execution. Yet such power of the state is subject to control and regulation by Congress when acting pursuant to its constitutional power. (See Clafin v. Houseman, etc., 93 U. S. 130.)"

We also ruled in the recent case of Pratt et al. v. Hollenbeck, 46 D. & C. 657, that this act is constitutional, stating, however, that the said act had not been ruled upon as to its constitutionality by the Supreme Court of the United States.

The testimony set forth in detail just what proposed improvements the landlord contemplated making. The testimony on the part of the tenant disclosed a willingness to be inconvenienced to any reasonable extent by contractors or repairmen while these improvements were being carried on. It is not for this court to pass upon the merits or demerits of the Rent Control Act. It is an emergency measure. It confronts us and we must be governed accordingly. Therefore, any loss to the landlord or inconvenience to the tenant should not, in our opinion, be used as a guiding star in the decision of this case.

In ruling upon this case, we must be guided by principles of equity. When courts of equity were established in this Commonwealth we retained the old common-law form of opening judgments in the court of common pleas. The judge really sits as a chancellor and should decide the case on the equities therein contained: Kowatch et al. v. Home Building & Loan Association of Latrobe, 131 Pa. Superior Ct. 517; Michaels v. Moritz, 131 Pa. Superior Ct. 426; Mielcuszny et ux. v. Rosol et ux., 317 Pa. 91. Therefore, can we soundly say that the equities of the landlord surpass those of the tenant in this great emergency era of housing shortages? We deem that it would be a manifest abuse of discretion were the court to refuse the opening of this judgment.

Therefore, in view of the foregoing, we make the following

*Order*

Now, to wit, July 19, 1943, the rule granted April 12, 1943, on defendant's petition to open judgment be and the same is hereby made absolute, the judgment is opened, and defendant is let into a defense; all proceedings are stayed in the meantime. Before trial the attorneys in this case shall prepare for the approval of the court a stipulation as to the issue or issues to be presented before a jury.