## Court of Appeals.

February 27, 1894.

## PEOPLE v. THOMAS A. WELCH.

(57 St. Rep. 392; 141 N. Y. 266;) affirming 9 N. Y. Cr. 144.

1. JURISDICTION—STATE.

State courts have criminal and civil jurisdiction, in the absence of any prohibition in the Federal constitution or laws, over the navigable waters within state limits.

**2. SAME.**

Powers granted the federal constitution are not exclusive, unless made so in terms, or prohibited to the states, or are incompatible with the exercise of a concurrent jurisdiction.

**3. SAME.**

In the absence of any such exclusion, state jurisdiction may be exercised, though congress has vested jurisdiction over them in the federal courts.

**4. SAME.**

No presumption that state authority is excluded, arises from the mere fact that congress has legislated. There must be express words of exclusion, or a manifest repugnancy in the exercise of state authority over the subject.

Appeal from judgment of the general term of the supreme court in the first judicial department, entered upon an order made December 20, 1893, which affirmed a judgment of the court of general sessions of the peace in and for the city and county of New York entered upon a verdict convicting defendant of the crime of manslaughter in the second degree.

The facts, so far as material, are stated in the opinion.

Lorenzo Semple, for appellant.

John D. Lindsay, for respondent.

ANDREWS, Ch. J.—The defendant was convicted at the court of general sessions held in and for the city and county of New York, of the crime of manslaughter in the second degree, upon an indictment charging him with having, on the 15th of June, 1891, upon the Hudson river in said city and county, feloniously and willfully propelled and forced the steam tug "F. W. De Voe," upon which he then was, against the yacht "Amelia," on which was one Francis Jackson, thereby forcing the said Francis Jackson into the river, and causing his death by drowning. The record contains an agreed statement of the facts proved, in substance, that the defendant Welch was duly licensed to act as a second-class pilot on steam vessels by the United States local board of inspectors of steam vessels for the district of New York; that while said license was in full force, and while the defendant

was engaged in the actual performance of his duties as pilot under said license, a collision occurred June 15, 1891, on the Hudson river in the county of New York, between the steam towboat on which the defendant was employed, and which at the time was under his control and management as pilot, and the sloop yacht "Amelia," which collision was caused by the willful misconduct, negligence and inattention to his duties on said "F. W. De Voe," of the defendant; that said collision so caused resulted in the sinking of the yacht "Amelia," and in the destruction of the life of Francis Jackson, who was at the time on board of the yacht, by drowning.

The sole question presented on this appeal is as to the jurisdiction of a state court to entertain jurisdiction of the offense established by the evidence, the claim in behalf of the defendant being that the federal courts have exclusive jurisdiction of the offense of which he was convicted.    Section 5344 of the U. S. Revised Statutes is as follows:    "Every captain, engineer, pilot or other person employed on any steamboat or vessel, by whose misconduct, negligence or inattention to his duties on such vessel the life of any person is destroyed, and every owner, inspector or other public officer through whose fraud, connivance, misconduct or violation of law the life of any person shall be destroyed, shall be deemed guilty of manslaughter, and upon conviction thereof before any circuit court of the United States shall be sentenced to confinement at hard labor for a period of not more than ten years."

It is plain that the circumstances found bring the case within this section.    The defendant was a licensed pilot.    He was in charge of the steam tugboat as pilot at the time of the collision. The collision which resulted in the death of Jackson was caused by the misconduct, negligence and inattention to his duties of the defendant, and, moreover, his misconduct was, as the jury found, willful, an element which does not seem to be necessary to constitute the crime defined in the statutes of the United States.    In the consideration of the question of the jurisdiction of the state court there are certain indisputable propositions which it is im-

portant to bear in mind. The Hudson river is within the territory of New York, and is subject to its legislative jurisdiction. The criminal laws of the state apply to offenses committed on the waters of the river, whether above or below the ebb and flow of the tide, to the same extent as to like offenses committed upon the land, except in so far as the laws of congress, under the constitution of the United States, have asserted an exclusive jurisdiction. In United States v. Bevans, 3 Wheat. 336, the defendant had been indicted and convicted of murder in the United States court of Massachusetts, committed on board of a man-of-war of the United States in Boston harbor, he being at the time a marine on the vessel. The conviction was reversed by the supreme court of the United States on the ground that the place where the murder was committed was within the territorial limits of Massachusetts, and that as no law of congress had made a murder within the territorial jurisdiction of a state, on tide water or elsewhere, an offense against the United States, the state court alone had jurisdiction. In Smith v. Maryland, 18 How. U. S. 71, Mr. Justice Curtis, referring to the grant of admiralty and maritime jurisdiction in the United States Constitution, said: "We consider it to have been settled by this court, in United States v. Bevans, that this clause in the constitution did not affect the jurisdiction, nor the legislative power of a state, over so much of their territory that lies below high-water mark, save that they parted with the power so to legislate as to conflict with the admiralty jurisdiction or the laws of the United States." The rights of a state to exercise jurisdiction over navigable waters within its limits, and to subject persons and property thereon to the civil and criminal jurisdiction of its courts, in the absence of any prohibition in the federal constitution or laws, has passed unchallenged, and is an undoubted incident of sovereignty.

Another proposition equally beyond question is that the crime of which the defendant was convicted is one defined by a statute of the state of New York, and that independently of any statute the facts established the crime of manslaughter at common law. The Revised Statutes, after defining the crime of murder and

what shall constitute the crime of manslaughter in the higher degrees, proceeded to declare (2 R. S. 662, § 19): "Every other killing of a human being by the act, procurement or culpable negligence of another, where such killing is not justifiable or excusable, or is not declared in the act to be murder or manslaughter of some other degree, shall be deemed manslaughter in the fourth degree." It is scarcely necessary to cite authorities to show that the statute above quoted was simply declaratory of the rule of common law, that a killing of a human being by culpable negligence is manslaughter. Wharton's Crim. Law, §§ 361-5, and cases cited. The courts of this state on the adoption of the state constitution of 1777, became vested with the jurisdiction over offenses cognizable at common law, and this jurisdiction is unimpaired and in full force except in so far as it has been modified by state legislation, or was surrendered to the United States by the federal constitution, or has been taken away by act of congress lawfully enacted in execution of the powers conferred by that instrument. It is an accepted canon in the construction of powers granted to the general government by the federal constitution that state authority existing when the constitution was adopted is not excluded by the mere grant of similar powers to congress. The powers granted by the federal constitution are not exclusive, unless made so in terms, or prohibited to the states, or are incompatible with the exercise of a concurrent jurisdiction. But the principle has been grafted upon the subject that although powers conferred by the constitution upon congress are not in terms or in their nature exclusive of the power of the states, they may be made so by national legislation excluding the jurisdiction of the state in the particular manner, although within their original and antecedent authority. In Martin v. Hunter, 1 Wheat. 304, Judge Story, referring to the judicial power of the United States, said: "It is manifest that the judicial power of the United States is unavoidably in some cases exclusive of all state authority, and in all others may be made so at the election of congress." The Judiciary Act of 1879 (U. S. Stats. at Large, vol. 1, chap. 20) was framed upon this construction of the power of

congress, and the jurisdiction of the courts of the United States was in some cases made exclusive, and in others the jurisdiction of the state courts not being in terms excluded, was left unaffected and was concurrent with the courts of the Union as to matters over which the state courts could, by their own powers and constitution, exercise jurisdiction. A distinction has been suggested as to the power of congress to make the jurisdiction of the United States courts exclusive, between cases in which the state courts had jurisdiction antecedent to the adoption of the constitution, and those where the right involved or the liability incurred arises exclusively under a law of congress, and without which it would have had no existence. See Curtis on Const. § 141. But the recent cases of "The Moses Taylor," 4 Wall, 411, and Clafflin v. Houseman, 93 U. S. 130, seem to be adverse to the distinction suggested and to hold that it is competent for congress to exclude the jurisdiction of the state court in respect of all subjects upon which congress may legislate. In "The Moses Taylor" it seemed to be conceded that the proceeding there under review was a matter as to which the original states through their courts could have exercised jurisdiction antecedent to the adoption of the federal constitution, and the decision was placed on the ground that the jurisdiction was excluded by force of the ninth section of the Judicary Act of 1789, and vested exclusively to the district courts of the United States. See 1 Kent Com. 400. But it is obvious that to exclude the jurisdiction of the state courts over matters within their ordinary jurisdiction, the intention of congress to exercise this power should be distinctly manifested and that the legislation relied upon to deprive the state courts of jurisdiction should be clear and unambiguous. There can be no presumption that state authority is excluded from the mere fact that congress has legislated. There must be express words of exclusion, or a manifest repugnancy in the exercise of state authority over the subject. See Curtis on Const. § 121.

It must, we think, be conceded that section 5344 of the Revised Statutes of the United States was in its general purpose and

enactment within the power of congress, under the constitutional grant of power to "regulate commerce with foreign nations and among the several states" (Art. 1, § 8), and the grant of judicial power in cases of "admiralty and maritime jurisdiction" (Art 3, § 1), and the authority vested in congress "to make all laws which shall be necessary and proper for carrying into execution" the powers vested in congress by the constitution (Art. 1, § 8, sub. 17). The Hudson river is within the admiralty jurisdiction of the United States. The Genesse Chief, 12 How. U. S. 443. The power to regulate commerce extends to the persons who conduct navigation as well as to the instruments used, and the United States courts may be invested by congress with jurisdiction over offenses committed upon waters within the admiralty jurisdiction. Cooley v. Port Wardens of Philadelphia, 12 How. U. S. 299; United States v. Coombs, 12 Pet. 72; Curtis on Const. § 47.) The legislation of which section 5344 is the culmination, had its origin in the act of congress of July 7, 1838, (5 U. S. Statutes at Large, p. 304), entitled "an act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam." It was extended by the act of February 28, 1871 (16 U. S. Statutes at Large, p. 456, § 57), and the provision in its present form was enacted in the revision of 1873, and forms section 5344, of title 70, of the United States Revised Statutes, entitled "Crimes." The power of congress to enact rules for the government of vessels on waters within the admiralty jurisdiction; to prescribe the qualifications and duties of captains, pilots and other persons employed thereon; to supervise the construction of steam vessels, with a view to secure the safety of passengers and others; to require licenses to be obtained by those engaged in navigation, and the inspection of steam boilers at recurring intervals, has been exercised without challenge, and a large body of rules covering these and cognate subjects have been enacted by congress, or under its authority, and are to be found in the Revised Statutes of the United States. The power to enact rules on a specified subject carries the power to enforce penalties for their violation. The primary purpose of

section 5344 was to secure, by criminal sanctions, the observance by owners, officers, employees of vessels, inspectors and other public officers, of the duties imposed upon them in connection with the business of navigation for the security of human life. Whether the section has, as is claimed, broader application than is justified by the power of congress, we deem it necessary to consider. We have no doubt that, as applied to licensed officers or pilots, the enactment does not transcend its power.

It remains to consider whether the offense defined in the section is exclusively punishable in the courts of the United States. The states do not enforce the criminal laws of the United States. U. S. v. Lathrop, 17 Johns. 4. The state in punishing the defendant is not enforcing a statute of the United States. It is enforcing its own laws, which had an existence coeval with the formation of the state constitution. The crime of which the defendant was convicted was primarily a crime against the peace and good order of the state. It was only a crime against the United States, because congress, in the interest of navigation, had seen fit to enact a law making one species of homicide, when committed by an officer, pilot, etc., manslaughter punishable in the courts of the United States. There is nothing in the enactment itself which makes the jurisdiction exclusive. There is no repugnancy in the existence of concurrent jurisdiction in the state courts to punish under its laws this grade of homicide. The jurisdiction of the United States courts is not exclusive unless there is found elsewhere in the legislation of congress, provisions of clear and unmistakable import, taking away the jurisdiction of the courts of the state. The principle that congress may lawfully exclude the jurisdiction of the state courts of offenses punishable under federal statutes was first applied by section 11 of the judiciary act of 1789, which declared that the circuit courts of the United States shall have "exclusive cognizance of all crimes and offenses cognizable under the authority of the United States, except where this act otherwise provides or the laws of the United States shall otherwise direct." The jurisdiction of the state courts to punish under state laws offenses which are cognizable by the circuit courts of

the United States was made by this section to depend upon affirmative legislation by congress, giving the state courts concurrent jurisdiction.    Subsequent to the act of 1789 laws were passed by congress punishing the counterfeiting of the current coin of the United States and the uttering of the same.    Chap. 49, Laws of 1806; chap. 75, Laws of 1807; chap. 44, Laws of 1816; chap. 65, Laws of 1825.    These acts contain the following provision: "And be it further enacted that nothing in this act contained shall be construed to deprive the courts of the individual states of jurisdiction under the laws of the several states, over offenses made punishable by this act."    In 1847 the question whether the courts of Ohio could entertain jurisdiction under the laws of that state of the offense of passing counterfeit coin of the United States, came before the supreme court of the United States in the case of Fox v. State of Ohio, 5 How. U. S. 410, upon writ of error, after the conviction of the defendant in the state court of that offense.    It was urged that the proviso in the Federal statutes above referred to did not affect the exclusive jurisdiction of the United States courts under section 11 of the judiciary act of 1789.    The supreme court sustained the jurisdiction of the state court, and the decision necessarily adjudged that the proviso in these statutes was a law of the United States, excepting cases of passing counterfeit coin from the clause in the act of 1789, giving exclusive jurisdiction to the United States courts of offenses cognizable under the laws of the United States.    Mr. Justice Washington, in Houston v. Moore, 5 Wheat. 26, gave the same construction to the proviso in the acts referred to.    The case of United States v. Marigold, 9 How. U. S. 560, brought into question the jurisdiction of the courts of the United States to punish the crime of passing counterfeit coin, under the Federal statute, and in this case also the jurisdiction was affirmed.    The two cases of Fox v. State of Ohio and United States v. Marigold established the proposition that the same act may be an offense both against the state and the United States and punishable in each jurisdiction under its laws.    The same principle has been declared in other cases.    Moore v. Illinois, 14 How.

U. S. 13; Chief Justice Taney, U. S. v. Almy, Quarterly Law Journal, July, 1859; Ex Parte Seebold, 100 U. S. 371.

Section 5328 of the United States Revised Statutes, which is one of the general provisions of title 70, entitled "Crimes," declares: "§ 5328. Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof." Later on in this title is section 5344, making the misconduct, negligence or inattention to his duties of a captain, pilot, etc., manslaughter. The provision as to exclusive jurisdiction contained in section 11 of the judiciary act of 1789, is incorporated in substance into the United States Revised Statutes in the 20th sub. of section 629, which declares that the circuit courts of the United States shall have "exclusive cognizance of all crimes and offenses cognizable under the authority of the United States, except where it may be otherwise provided by law."

If the question of the jurisdiction of the state courts in the present case depends solely upon the construction of the clause in section 629, just quoted, and of section 5328 of the United States Revised Statutes, there could be little ground, under the decisions of the supreme court of the United States, construing the proviso in the counterfeiting acts, for denying such jurisdiction. Section 5328 is in legal effect a re-enactment of the proviso in those acts applicable to the crimes mentioned in title 70 of the Revised Statutes of the United States. The proviso in the counterfeiting acts was held to withdraw the crimes therein mentioned from the operation of the 11th section of the judiciary act of 1789, and to create an exception to the general rule declared in that section, excluding the jurisdiction of the state courts of offenses cognizable in the courts of the United States. The same construction, applied to section 5328, would make the jurisdiction of the state courts of the offense now in question, concurrent. But the confusion and uncertainty attending the subject is produced by another section of the Revised Statutes of the United States, first enacted at the time of the revision, being section 711. That section declares: "The jurisdiction vested in the courts of

the United States in the cases hereinafter mentioned, shall be exclusive of the courts of the several states: First, of all crimes and offenses cognizable under the laws of the United States." Construing this section upon its language alone and without reference to other sections mentioned, it would exclude the jurisdiction of the state courts over the offense of manslaughter committed by a pilot or other person employed on vessels, under the circumstances mentioned in section 5344. If such construction is imperatively required, it would result in the apparent anomaly of leaving to the state courts jurisdiction of the crime of murder committed on board of a vessel on navigable waters within the territory of the state, whether by an officer, pilot or other person, and depriving them of jurisdiction of the crime of manslaughter, defined in section 5344. If the defendant had murdered Jackson, the state court would have undoubted jurisdiction of the crime. Manslaughter is one of the grades of criminal homicide. Can it be reasonably supposed that congress, by an act which was primarily intended to enforce the observance, by persons engaged in navigation, of the rules it had established for the security of life and property, intended further to oust the jurisdiction of the state courts over one grade of the offense of manslaughter, of which they before had undoubted jurisdiction, and where the offense, whether committed by a pilot or any other person, was primarily an offense against the state? It was made an offense against the United States also by reason of the relation in which the offender stood to the United States, under its rules and regulations, which he was bound to observe. We think section 5328 must be construed as exempting from the operation of section 711 the cases specified in title 70, which were also offenses punishable under the laws of the several states. Under section 711, the states could not enforce the criminal statutes of the United States, as was attempted in substance under the law of Pennsylvania, involved in Houston v. Moore, 5 Wheat. 7. Nor, under section 711, could a state make an act criminal and punishable in its courts, which in its nature was an offense only, because made so by a law of congress. Section 5328 may perhaps be construed as confining the

concurrent jurisdiction of the state courts, of offenses specified in title 70, to such offenses as were such under the laws of the states existing when that section was enacted, leaving the section to operate to prevent future legislation by the states concerning the crimes mentioned in that title, not before cognizable under state laws. But whatever may be the true construction of that section, to give it the broad application claimed, would, we think, ignore the true scope or meaning of section 5328, interpreted in the light of the previous decisions of the supreme court of the United States. We are not satisfied with the view taken in some of the circuit and district courts of the United States, that section 5328 was intended merely to permit a state court to punish a different offense involved in the same act. Such a distinction is very difficult to apply, and it grafts on the section a qualification of its general language. Many of the crimes specified in title 70 are, in their nature, exclusively offenses against the United States. Such offenses are withdrawn from state jurisdiction, because they are not and cannot be offenses against a state. We have seen that where the exercise of state authority is incompatible with the exercise of federal authority granted by the constitution of the United States, the state authority is superseded without express words. This principle applies as well to judicial as to legislative powers. Federalist, No. 82, by Hamilton. It was upon this principle, as we understand, that it was held by the supreme court of the United States (In re Loney, 134 U. S. 372), that a state court had no jurisdiction to punish perjury, committed in a contested election case, of a member of the house of representatives, under a proceeding regulated by a law of the United States. The learned justice who delivered the opinion in that case, after stating that the power of punishing a witness for perjury in a judicial proceeding belongs peculiarly to the government in whose tribunals the proceeding was had, said: "It is essential to the impartial and efficient administration of justice in the tribunals of the nation, that witnesses should be able to testify freely before them, unrestrained by legislation of the state, or by fear of punishment in the state courts. The administration of justice in the national

tribunals would be greatly embarrassed and impeded." etc.    The cases of People v. Fonda, 62 Mich. 401, and Com. v. Felton, 101 Mass. 204, held that the state courts have no jurisdiction of the crime of embezzlement by an officer of a national bank of the funds of such bank. . It is sufficient to say that the offense of embezzlement, under the National bank acts, was subject to the provisions of section 11 of the judiciary act, and is not one of the crimes exempted from its operation by section 5328 of the Revised Statutes of the United States.    The contention that section 711 excludes the state courts from jurisdiction of all crimes enumerated in title 70, if sustained, takes from the state courts the power to punish the passing of counterfeit money of the United States, a convenient jurisdiction which they have exercised from the commencement, and which, as was assumed by Mr. Justice Gray, in the case of In re Loney, still exists.

Upon the whole case we are of opinion that the state court had jurisdiction to punish the defendant for the crime proved.    Its jurisdiction has not, we think, been taken away by the legislation of congress.    It would be a more satisfactory state of this law than now exists if it could be held that the court first acquiring jurisdiction should retain it, and that the judgment of one court in such a case as this, could be pleaded in bar of a further prosecution for substantially the same offense in the courts of the other jurisdiction.

The judgment and conviction should be affirmed.

All concur.

Judgment affirmed.