In the Matter of ARMAND SCHMOLL, INC., Appellant, against FEDERAL RESERVE BANK OF NEW YORK, Respondent.

Argued June 6, 1941; decided October 16, 1941.

*Hersey Egginton, George D. Mumford* and *Charles D. Peet* for appellant. The court at Special Term erred in holding that the Supreme Court of this State was without jurisdiction to order the respondent to comply with section 522, paragraph c, of the Tariff Act of 1930 (46 Stat. 739). (*Claflin* v. *Houseman*, 93 U. S. 130; *Second Employers' Liability Cases*, 223 U. S. 1; *Galveston, H. & S. A. Ry. Co.* v. *Wallace*, 223 U. S. 481; *Minneapolis & St. Louis R. R. Co.* v. *Bombolis*, 241 U. S. 211; *People* v. *Welch*, 141 N. Y. 266; *St. Louis, B. & M. Ry.* v. *Taylor*, 266 U. S. 200; *Teall* v. *Felton*, 1 N. Y. 537; *First Nat. Bank* v. *Union Trust Co.*, 244 U. S. 416; *Northern Pacific Ry. Co.* v. *North Dakota*, 250 U. S. 135; *Matter of Hurley* v. *National Bank of Middletown*, 252 App. Div. 272; *Matter of Tuttle* v. *Iron Nat. Bank*, 170 N. Y. 9; *Guthrie* v. *Harkness*, 199 U. S. 148.) State courts have jurisdiction to require federal agents to comply with the federal law. (*Warner Valley Stock Co.* v. *Smith*, 165 U. S. 28; *Marbury* v. *Madison*, 1 Cranch, 137; *Wilbur* v. *Krushnic*, 280 U. S. 306; *Teall* v. *Felton*, 1 N. Y. 537; *People* v. *Welch*, 141 N. Y. 266; *Claflin* v. *Houseman*, 93 U. S. 130; *First Nat. Bank* v.

*Missouri*, 263 U. S. 640; *First Nat. Bank* v. *Union Trust Co.*, 244 U. S. 416; *Guthrie* v. *Harkness*, 199 U. S. 148; *Matter of Tuttle* v. *Iron Nat. Bank*, 170 N. Y. 9; *Federal Land Bank* v. *Priddy*, 295 U. S. 229; *Kendall* v. *United States*, 12 Pet. 524; *Waite* v. *Macy*, 246 U. S. 606; *Merritt* v. *Welsh*, 104 U. S. 694; *Garfield* v. *Goldsby*, 211 U. S. 249; *Riggs* v. *Johnson County*, 6 Wall. 166.)

*Allen T. Klots, Walter S. Logan, Rufus J. Trimble, G. Schuyler Tarbell, Jr.*, and *John H. Wurts* for respondent. The courts of the State of New York do not have jurisdiction of the subject of this proceeding. A state court has no jurisdiction to issue mandamus to direct performance of a federal function by a federal agency. (*McClung* v. *Silliman*, 6 Wheat. 598; *Matter of Tarble*, 13 Wall. 397; *Matter of Shockley*, 17 Fed. Rep. [2d] 133; *State ex rel. Wilcox* v. *Curtis*, 35 Conn. 374; *Hinkle* v. *Town of Franklin*, 118 W. Va. 586; *Goldstein* v. *Somervell*, 170 Misc. Rep. 602; *Kendall* v. *United States*, 12 Pet. 524; *Territory* v. *Lockwood*, 3 Wall. 236; *Matter of Blake*, 175 U. S. 114; *United States* v. *Owlett*, 15 Fed. Supp. 736; *Johnson* v. *Maryland*, 254 U. S. 51; *Ohio* v. *Thomas*, 173 U. S. 276.)

*Mathias F. Correa, United States Attorney (George B. Schoonmaker* of counsel), for United States of America, *amicus curiæ*. The action of the Federal Reserve Bank of New York under section 522 of the 1930 Tariff Act in determining and certifying the buying rate of foreign currency is not subject to control by a state court because such action is in performance of a governmental function of the United States. (*McClung* v. *Silliman*, 6 Wheat. 598; *Territory* v. *Lockwood*, 3 Wall. 236; *Matter of Blake*, 175 U. S. 114; *Matter of Tarble*, 13 Wall. 397; *Matter of Shockley*, 17 Fed. Rep. [2d] 133; *Hinkle* v. *Town of Franklin*, 118 W. Va. 586; *People* v. *Kidd*, 23 Mich. 440; *United States* v. *Owlett*, 15 Fed. Supp. 736; *United States* v. *Query*, 21 Fed. Supp. 784; *Johnson* v. *Maryland*, 254 U. S. 51; *Keely* v. *Sanders*, 99 U. S. 441.)

LEHMAN, Ch. J.   Under the United States Tariff Act of 1930, chapter 497 (46 Stat. 739; U. S. Code, tit. 31, § 372), the Federal Reserve Bank of New York is authorized and required, under specified conditions, to determine and certify daily to the Secretary of the Treasury " the buying rate for cable transfers." The statute directs that such determination shall be made in manner defined in the statute. Claiming that the Federal Reserve Bank has failed to determine the buying rate in manner directed by the federal statute, the appellant has brought proceedings under article 78 of the Civil Practice Act to compel the Federal Reserve Bank to make its determination in manner provided by law. The proceedings have been dismissed on the ground that the state courts have no jurisdiction to issue orders or directions to the Federal Reserve Bank in the performance of its statutory duty.

The Federal Reserve Bank is a federal agency exercising powers conferred by federal statute and performing duties imposed upon it by federal statute in a field which, under the Constitution of the United States, is within the sole and exclusive jurisdiction of the federal government. In the case of McClung v. Silliman (6 Wheat. [U. S.] 598) the Supreme Court of the United States declared in unambiguous and emphatic language that the state court is without power to give such directions to a federal officer acting under a federal statute within a field from which the state government is excluded. No case has been cited to us where a state court has since that time assumed to give such directions. Nor has the Supreme Court of the United States in any opinion or decision cast doubt upon the scope of its decision in that case.

We are now told, however, that, though language is found in Justice JOHNSON's opinion in that case which " seemingly supports the rule that the state courts have no jurisdiction or power to give directions to a federal agent or to control the agent's acts in the performance of a specific function entrusted to the agent by a federal statute, at least within a field from which the state is excluded by

the constitution of the United States," yet that the mandate of the Supreme Court of the United States, in the cited case, contrary to what is said in the opinion, affirms " on the merits " a decision of the state court holding that the state court has such power.

Examination of the mandate of the court shows clearly that it is dictated by what was said in the opinion and constitutes emphatic warning to the courts, state and federal, to remain within the field of jurisdiction allotted to each. In that case, a party aggrieved by a determination of a federal agent acting under a federal statute, applied to the state court for an order directing the federal officer to perform his duties in manner provided by the federal statute. The state court overruled a challenge to its jurisdiction by the United States government, but after consideration of the merits of the claim dismissed the application made to it for relief. The applicant for relief, disappointed by that decision against him, brought the case to the United States Supreme Court for review. The government of the United States did not, of course, challenge the order of the Supreme Court of Ohio, which had determined the case in favor of the government. The Supreme Court of the United States affirmed that determination in favor of the government on the ground that the state court had no power to grant the application. In its opinion the court pointed out that " The question before an appellate court is, was the judgment correct, not the ground on which the judgment professes to proceed " (p. 199), and the mandate or judgment of the Supreme Court of the United States, like the opinion, supplies the ground for the adjudication, for after affirming the judgment of the Supreme Court of Ohio, the mandate of the Supreme Court of the United States continues, " it being the opinion of this court that the said Supreme Court of the State of Ohio *had no authority* to issue a mandamus in this case." (Italics are new.)

The opinion of the court in the case of *Kendall* v. *United States* (12 Pet. [U. S.] 524), to which Judge CONWAY refers in his dissenting opinion, far from suggesting that the case

of *McClung* v. *Silliman* (*supra*) was decided on any other ground, again states the ground of the decision and recognizes its authority: " The only question directly before the court, was, whether a state court had authority to issue a mandamus to an officer of the United States, and this power was denied " (p. 617). What the court said on page 619 in reference to the decision of the court in *Columbian Ins. Co.* v. *Wheelwright* (7 Wheat. [U. S.] 534) can have no possible application to the *McClung* case.

The right of a state court, in many cases, to vindicate and protect rights granted by a federal statute or to give redress for wrongs committed by a federal officer under color of authority granted by federal statute, cannot be doubted. It has been firmly established in the cases cited by Judge CONWAY, and especially in *Claflin* v. *Houseman* (93 U. S. 130.) It is to be noted, however, that in that case the court was careful to point out that there are fields from which the state courts are excluded. The question here presented is narrow. In the opinion of Mr. Justice ROSENMAN at Special Term, he said: " The question involved here is not whether rights created by a federal statute may be the subject of controversy in a state court. It is whether the manner of performance of a specific federal government statutory function by a federal statutory agency can be the subject of a decree of a state court. This case does not involve any encroachment upon the state's authority by a federal agency; or any power given by the Congress to a state court to interpret a state law; or a suit against individual federal officers who are allegedly infringing upon the rights of an individual in violation of their duties. Consequently the cases relied upon by the petitioner are not in point. Not one of them is, in the opinion of this court, authority for the proposition that a state court has the jurisdiction here urged."

The cases cited in Judge CONWAY's opinion sustain the power of a state court acting within the field of its allotted jurisdiction, to enforce rights created by federal statute and to remedy wrongs committed by federal officers under

color of authority granted by federal statutes. No case has been cited which holds that a state court may go outside that field and control the manner in which a federal agency performs or attempts to perform its functions and duties under the Tariff Act or other federal statute where the Federal government has exclusive jurisdiction. Assumption of such power would hamper orderly government and ignore the division of the fields of government of state and nation created by the Constitution. No case has been cited which might justify the invocation of the powers of a state court in this proceeding.

The order should be affirmed, with costs.

CONWAY, J. (dissenting). This is a proceeding under section 1289 of the Civil Practice Act brought by petitioner to obtain an order directing the Federal Reserve Bank to perform a mandatory, ministerial duty enjoined upon it by section 522 (c) of the Tariff Act of 1930 (U. S. Code, tit. 31, § 372). No answer was filed but respondent moved under section 1293 of the Civil Practice Act for an order dismissing the petition on objections in point of law. Special Term granted the motion as a matter of law only, viz., upon the ground that the Supreme Court had no jurisdiction of the subject of the proceeding, specifically excluding any exercise of discretion. The appeal to this court is from an order of the Appellate Division unanimously affirming the order of Special Term.

In January and February, 1936, the petitioner imported three lots of cattle hides from Brazil. Those hides were subject to an *ad valorem* duty of ten per cent and they were appraised in Brazilian milreis as of the date of exportation from Brazil. Under the Tariff Act it was the duty of the Collector of Customs of the Port of New York, prior to liquidating the duties on the hides, to convert their appraised values into United States currency and in so doing to use the rates of exchange determined in accordance with section 522 of the Tariff Act of 1930.

Subdivision (c) of section 522 is the material portion of the section here. It reads as follows:

" (c) Market Rate When No Proclamation.— If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. If the date of exportation falls upon a Sunday or holiday, then the buying rate at noon on the last preceding business day shall be used. For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary of the Treasury, who shall make it public at such times and to such extent as he deems necessary. In ascertaining such buying rate such Federal reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange."

Congress specifically provided that the " value " of the foreign currency for customs purposes " shall be the buying rate for cable transfers payable in the foreign currency * * * and shall be determined by the Federal Reserve Bank of New York * * *." " Value " and " buying rate " were not used synonymously. The latter was the measuring rod for the former and Congress precluded the consideration of other factors. All functions involving judgment and discretion were eliminated by restricting the inquiry to the New York market buying rate for cable transfers. A " positive and peremptory rule of valuation " was prescribed.

On the dates in question the Collector converted the appraised milreis value of the hides into United States currency at the rates certified by the respondent. The respondent had certified as the buying rates for cable transfers in Brazilian milreis, amounts more than forty per cent

in excess of the actual rates, at the same time admitting that they were not the actual rates but asserting that there were no market rates by characterizing each rate certified as " Nominal rate. Firm rates not available."

During all of the period in question, as established by the affidavit of an officer of one of the largest New York trust companies, there were actual transactions in cable transfers payable in Brazilian milreis and in which firm quotations of the buying rates for such cable transfers were at all times obtainable. The actual rates on the three days in question were $0.0555, $0.0560 and $0.0585 per milreis, respectively. The maximum range over the whole three months' period was only two-fifths of a cent. The respondent received daily reports of those rates from its member banks and every person having a principal place of business in its district who engaged in such transactions and transfers, with minor exceptions, was required by law to report complete information relative thereto to respondent.

Notwithstanding these actual market rates, the respondent certified for the same three days in question the following rates per milreis respectively: $0.083916, $0.084200 and $0.084700. These rates were over fifty per cent higher than the actual market rates.

The petitioner alleges that there is no way in which the respondent can be forced to certify the correct rates other than by this proceeding.

No answer was filed so the facts are admitted for the purpose of this proceeding. A motion was made under section 1293 of the Civil Practice Act for an order dismissing the petition on objections in point of law:

" (1) this court has no jurisdiction of the subject of the proceeding;

" (2) the petition does not state facts sufficient to entitle the petitioner to the relief prayed for or to any relief;

" (3) the proceeding was not instituted within the time limited by law for the commencement thereof; and

" (4) the determination sought to be reviewed can be adequately reviewed by an appeal to a court or to some other body or officer."

The learned Special Term justice dismissed the petition as a matter of law on the ground that the court did not have jurisdiction of the subject of the proceeding and specifically excluded any question of discretion. Respondent's remaining objections were not passed upon. We shall, therefore, devote ourselves to the question of jurisdiction solely except for a passing reference to objection numbered (4) above.

Curiously, the respondent advances two arguments which are opposed one to the other. It argues first, and in this the United States, as *amicus curiæ* joins, that, on the basis of court decisions, the rates determined and certified by respondent for use in connection with the collection of customs are conclusive and binding and not subject to review in any court. It is a somewhat startling, if not sinister, argument to advance in a democracy that a citizen engaged in commerce is subject to uncontrolled power. We shall revert to this hereafter. The other argument is that Congress has granted exclusive jurisdiction over matters arising under section 522 (c) of the Tariff Act upon the Collectors of Customs and the courts having power to review their decisions. In other words, that the ordinary rule that the courts of this State have concurrent jurisdiction to enforce section 522 (c) does not apply because by the Tariff Act of 1930 Congress granted exclusive jurisdiction of all matters relating to the collection of customs to the Collector and to the Customs Court. Respondent concedes, however, that this must be *implied* from sections 514 and 515. It is elementary, however, that because Congress has legislated, State courts are not deprived of their jurisdiction. (*People* v. *Welch*, 141 N. Y. 266, 273, 275.) There it was said:

"* * * There can be no presumption that state authority is excluded from the mere fact that Congress has legislated. There must be express words of exclusion, or a manifest repugnancy in the exercise of state authority over the subject.

"* * * The jurisdiction of the United States courts is not exclusive unless there is found elsewhere in the legis-

lation of Congress, provisions of clear and unmistakable import, taking away the jurisdiction of the courts of the state. * * *." (See, also, to same effect, *First Nat. Bank* v. *Missouri*, 263 U. S. 640, 659, 660.)

In point of fact the jurisdiction of the Customs Court is limited to matters which the Collector has power to decide. (*Matter of Fassett*, 142 U. S. 479, 487; *De Lima* v. *Bidwell*, 182 U. S. 1, 175–177.) If the Collector has any authority at all in connection with the respondent's duty, at most it would be the power to determine whether or not the respondent has complied with the law. *Neither the Collector nor any federal court having jurisdiction over the respondent has power to compel it to comply with section 522 (c).*

To sustain this contention of respondent would be to say that a Congressional statute by implication excluded State courts from exercising jurisdiction beyond the powers of the Collectors and the Customs Courts although such jurisdiction had been conferred upon them by our laws. It is a sufficient answer to quote the following from *Dudley* v. *Mayhew* (3 N. Y. 9, 15): " It is very clear that when a party is confined to a statutory remedy, he must take it as it is conferred; and that where the enforcing tribunal is specified, the designation forms a part of the remedy, and all others are excluded. *The rule is inapplicable of course where property or a right is conferred, and no remedy for its invasion is specified. Then the party may sustain his right or protect his property in the usual manner.* That is in such cases reasonably supposed to be the intention of the Legislature, *as it could not be the design to confer a barren property or a fruitless right, which could not be protected or enforced anywhere.*" (Italics supplied.)

We return now to the question whether the Supreme Court is without jurisdiction to grant the relief sought and thus compel the respondent to perform the duties imposed by section 522 (c) in the manner directed.

Whether and to what extent section 522 (c) confers discretion upon respondent is plainly irrelevant on this motion. Its duties under the statute are mandatory and ministerial.

It is a jurisdictional limitation upon the respondent's power that the rates it certifies must be the buying rates for cable transfers payable in foreign currency in the New York market at noon on each day. By its motion to dismiss the respondent *admitted* not only that the rates it certified were not those rates and, accordingly, that it exceeded its powers under the statute, but that the actual rates were as claimed by petitioner.

State courts have jurisdiction concurrently with the federal courts to defend and enforce private rights created by federal laws, except (1) where Congress has deprived State courts of that jurisdiction by conferring *exclusive* jurisdiction over the subject matter upon the federal courts, and (2) where to do so would "interfere" with, that is, impair or destroy, the efficiency of the federal agent to perform its official duties. (*Claflin* v. *Houseman*, 93 U. S. 130, 133–143; *Second Employers' Liability Cases*, 223 U. S. 1, 55–59; *Galveston, H. & S. A. Ry. Co.* v. *Wallace*, 223 U. S. 481, 490; *Minneapolis & St. Louis R. R. Co.* v. *Bombolis*, 241 U. S. 211, 218, 221, 222; *People* v. *Welch*, 141 N. Y. 266, 272, 273.) We have indicated, *supra*, that Congress has not deprived the State courts of their ordinary concurrent jurisdiction. Moreover, Congress has specifically provided that respondent can " * * * sue and be sued, complain and defend, in any court of law or equity." (U. S. Code, tit. 12, § 341.) That includes State courts. (U. S. Code, tit. 12, § 632.)

The learned Special Term justice granted respondent's motion on the exclusive authority of *McClung* v. *Silliman* (6 Wheat. [U. S.] 598 [1821]) that there was no jurisdiction in the State courts to direct or control the conduct of a federal agent acting under a federal act, for the reason that such agent is subject only to the power creating it. Obviously that inference is not correct, for in the *McClung* case the application was first made to the local federal court and there denied because that court had no original power to issue mandamus, such jurisdiction having been generally withheld from federal courts by the Judiciary Act of 1789.

On then being renewed in the Ohio Supreme Court, the government objected that a State court had no power to issue mandamus to a federal agent acting under a federal statute. This preliminary objection to jurisdiction was overruled and the court, after trial, dismissed the application on the merits.

While language is found in Judge JOHNSON's opinion, which seemingly supports respondent's contention, the mandate, *by which the holding must be determined,* directs an affirmance on the merits of the judgment of the Ohio Supreme Court. The *McClung* case came to the United States Supreme Court on writ of error to the Ohio Supreme Court for Muskingum County. McClung, claiming a preemptive interest in several tracts of alleged "public land" of the United States, brought a mandamus proceeding in that Ohio court to compel Silliman, the Register of the United States Land Office at Zanesville, Ohio, to "enter" his application in the Register's "Book of Entries" — the "initiatory step" entitling him, upon full payment of the purchase price, to a "final certificate" which in turn would entitle him to a patent. Silliman had refused to make the entry on the ground that he had no power to act in the premises, because the lands had been previously sold to others. The Ohio court sustained its own jurisdiction over Silliman on a preliminary plea to its jurisdiction, in which Silliman argued that " * * * for his official acts as an officer of the United States, he is not subject to the order, direction or control of the courts of law for the State of Ohio, * * *." A year later the case *was tried on a stipulation of facts* which is a part of the record in the *Supreme Court.* On the *stipulated facts* the Ohio court dismissed the plaintiff's motion for a mandamus *on the merits.* The Supreme Court of the United States *affirmed* the dismissal. Its mandate reads: "Judgment. * * * it is adjudged and ordered that the judgment of the said Supreme Court of the State of Ohio be and the same hereby is *affirmed,* with costs; it being the opinion of this court that the said Supreme Court of the State of Ohio had no *authority* to issue a mandamus

in this case." Since the Supreme Court affirmed the Ohio court's·dismissal of McClung's petition on the merits, there was by necessary implication a holding that the State court had jurisdiction to issue mandamus in a proper case to compel compliance with a federal statute by a federal agent (*Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135), since the United States Supreme Court, if it intended to hold State courts without power to exercise their usual and conceded jurisdiction as against federal agents acting under Federal laws, would then by its mandate to the Ohio court have directed instead a dismissal for lack of jurisdiction — specifying that ground. As was aptly said in *Kendall* v. *United States* (12 Pet. [U. S.] at p. 619, referring to *Columbian Ins. Co.* v. *Wheelwright,* 7 Wheat. [U. S.] 524, 534): " If the want of jurisdiction in the circuit court had been the ground on which the writ of error was quashed, the same course would have been pursued as was done in the case of *Custiss* v. *Georgetown & Alexandria Turnpike Co.,* 6 Cranch, 233; where the writ of error was quashed on the ground that the court below had not cognizance of the matter."

Assuming, however, that the *McClung* case held that, on the stipulated facts in that case, the Ohio court did not have jurisdiction to grant the relief sought, it still is not authority that our Supreme Court was without jurisdiction here. The facts are in no way comparable. Here the petitioner is seeking to compel the respondent to perform a duty specifically imposed by federal statute. McClung sought to compel the Register of the Land Office to perform an act which was wholly beyond his authority. As appears from the stipulation of facts, prior to McClung's attempt to have the Register enter his application, a part of the land in question had been duly sold by a former Register of an earlier land office in another district and a United States patent had been issued; another part had also been sold by the same Register and the purchaser had made full payment, although he had not received his patent; and the remainder of the

land had been sold at private sale in accordance with the law. Accordingly, no part of the land McClung was seeking to pre-empt was a part of the public domain at the time he made his application. It had ceased to be within the jurisdiction of the land office and was no longer subject to entry or to disposition by the land officers. The Register had no power or duty to do the act which McClung sought to force him to perform. (*Simmons* v. *Wagner*, 101 U. S. 260, 261, 262; *Borax Consolidated, Ltd.*, v. *Los Angeles*, 296 U. S. 10, 17, 18.) For that reason no court, State or federal, *had power* to grant the relief sought in the *McClung* case. As stated by Mr. Justice JOHNSON, after pointing out that, were the case decided for the plaintiff, the Supreme Court would either be required to order the State court to issue the writ demanded or do so itself, at page 603 (6 Wheat. [U. S.]): "* * * Or, in other words, to issue the writ of mandamus, in a case to which it is obvious that neither the jurisdiction of that [the state] court, nor *this, extends.*"

McClung sought to have the court " interfere " with the Register's " official duties " by forcing him to do an act wholly beyond his authority. Whether Justice JOHNSON, in holding that the State court lacked such power, used the word " *jurisdiction* " in its technical sense, or merely as meaning "*authority*," as the Supreme Court's mandate reads, under the Constitution no court, State or federal, could have granted the relief McClung desired.

The *McClung* case was decided in 1821 but in 1820 (*Houston* v. *Moore*, 5 Wheat. [U. S.] 1, 32) the same Supreme Court held that a State court had the power to enforce the federal military laws, saying by Justice WASHINGTON: " Upon the whole, I am of opinion, after the most laborious examination of this delicate question, that the state court-martial had a concurrent jurisdiction with the tribunal pointed out by the acts of congress, to try a militia man who had disobeyed the call of the president, and to enforce the laws of congress against such delinquent; and that this authority will remain to be so exercised, until it shall please congress to vest it *exclusively* elsewhere, or until the state of

Pennsylvania shall withdraw from their court-martial the authority to take such jurisdiction." Mr. Justice JOHNSON, the author of the opinion in the *McClung* case, wrote a lengthy dissenting opinion and no doubt his views therein expressed affected and colored his *McClung* opinion. That, however, did not control the majority in that latter case for the mandate affirmed the dismissal on the merits by the Ohio Supreme Court, which latter had definitely asserted its jurisdiction, in a proper case, to issue mandamus to a federal agent. The enforcement of the federal military laws involves as much of a governmental function of an independent sovereignty as does the enforcement of the tariff laws.

It seems entirely clear that, in the absence of federal exclusory laws, all doubts as to the jurisdiction of State courts over federal matters and agents was set at rest by the complete adoption by the United States Supreme Court in *Claflin* v. *Houseman* (93 U. S. 130) of the views of Alexander Hamilton, respecting State courts, as set out in the eighty-second number of "The Federalist."

There it was argued by the defendants that "The State courts can neither interfere with, or interrupt, the exercise of the authority with which he [an officer appointed under the laws of the United States] is clothed, nor aid in enforcing it," and *McClung* v. *Silliman* was cited (p. 132). In overruling that argument the Supreme Court said (pp. 136, 137): "The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, paramount sovereignty, * * *. Legal or equitable rights, acquired under either system of laws, may be enforced in any court of either sovereignty competent to hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction. * * * So rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States courts, or

in the State courts, competent to decide rights of the like character and class; subject, however, to this qualification, that where a right arises under a law of the United States, Congress may, if it sees fit, give to the Federal courts *exclusive* jurisdiction. * * * This jurisdiction is sometimes exclusive by express enactment and sometimes by implication. If an Act of Congress gives a penalty [meaning civil and remedial] to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some Act of Congress, by a proper action in a State court. The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. The disposition to regard the laws of the United States as emanating from a foreign jurisdiction is founded on erroneous views of the nature and relations of the State and Federal governments. It is often the cause or the consequence of an unjustifiable jealousy of the United States government, which has been the occasion of disastrous evils to the country.

" It is true, the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by Chief Justice TANEY, in the case of *Ableman* v. *Booth*, 21 How. 506; and hence the State courts have no power to revise the action of the Federal courts, nor the Federal the State, except where the Federal Constitution or laws are involved. But this is no reason why the State courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied." (Emphasis and insertion supplied.)

So also in *Minneapolis & St. Louis R. R. Co.* v. *Bombolis* ([1915] 241 U. S. 211, 221, 222) Chief Justice WHITE on the authority of *Claflin* v. *Houseman* (*supra*), wrote that the " * * * lawful rights of the citizen, whether arising from a legitimate exercise of state or national power, unless excepted by express constitutional limitation or by valid legislation to that effect, are concurrently subject to be enforced in the courts of the State or nation when such rights come within the general scope of the jurisdiction conferred upon such courts by the authority, State or nation, creating them. This principle was made the basis of the first Federal Judiciary Act and has prevailed in theory and practice ever since as to rights of every character, whether derived from constitutional grant or legislative enactment, State or national. In fact this theory and practice is but an expression of the principles underlying the Constitution and which cause the governments and courts of both the Nation and the several States not to be strange or foreign to each other in the broad sense of that word, but to be all courts of a common country, all within the orbit of their lawful authority being charged with the duty to safeguard and enforce the right of every citizen without reference to the particular exercise of governmental power from which the right may have arisen, if only the authority to enforce such right comes generally within the scope of the jurisdiction conferred by the government creating them."

Similarly this court in *Teall* v. *Felton* (1 N. Y. 537, 545–549; affd., 12 How. 284, 291, 292), in holding a local postmaster liable for damages for neglect of duty in withholding mail, said (at pp. 545, 547): " * * * I think that it is strictly true that in all civil cases where the common law affords a redress, the party injured may seek it in a state tribunal, proceeding according to the course of the common law, and having jurisdiction of the person of the defendant, though he may be an officer of the federal government, and affect to act under a law of the Union.

" * * * it is an incorrect conclusion, that because a law of Congress prescribes the duties of an officer of the

federal government, and in a proper case he may thereunder defend his acts, for such reason the state courts are ousted of jurisdiction."

The *Claflin* case is decisive of three points:

1. It reaffirms the doctrine of this court in *Teall* v. *Felton* (*supra*), making federal agents purporting to act under federal laws liable in a great variety of actions for their wrongs, by saying (at p. 142): " We do not see why this case [*Teall* v. *Felton*] is not decisive of the very question under consideration."

2. It declared and reaffirmed the effect of *Houston* v. *Moore* (5 Wheat. [U. S.] 1) on jurisdiction of State courts, by saying in part: " Houston, a delinquent under the United States law, was tried by a state court-martial; and it was decided that the court had jurisdiction of the offense, having been constituted, in fact, to enforce the laws of the United States which the state legislature had re-enacted. But the decision (which was delivered by Mr. Justice WASHINGTON) was based upon the general principle that the State court had jurisdiction of the offence, irrespective of the authority, State or Federal, which created it. Not that Congress could confer jurisdiction upon the State courts, but that these courts might exercise jurisdiction on cases authorized by the laws of the State, and not prohibited by the exclusive jurisdiction of the Federal courts. Justices STORY and JOHNSON dissented; and, perhaps, the court went further, in that case, than it would now. * * * Be this as it may, it was only a question of construction; and the court conceded that Congress had the power to make the jurisdiction of its own courts exclusive " (pp. 141–142).

3. It overruled the contention of the plaintiff in error, for which he cited the *McClung* case, and which his counsel worded as follows (see p. 132): " The fact that an assignee in bankruptcy is dependent upon the national tribunals, and independent of those of the States, is conclusive against the jurisdiction of the latter, over statutory actions brought by him as an officer appointed under the laws of the United States. The State courts can neither interfere with, or

interrupt, the exercise of the authority with which he is clothed, *nor aid in enforcing it*." (Emphasis supplied.)

Thus the *Claflin* case destroys, as authority in any respect for respondent, the *McClung* case and expounds the law of jurisdiction of the state courts to be that as expressed by Alexander Hamilton. This Court of Appeals, however, anticipated the United States Supreme Court in the expression of those views in holding that federal agents purporting to act under federal laws were amenable to State courts for their conduct. (*Teall* v. *Felton, supra.*)

The United States Supreme Court in the *McClung* case has necessarily affirmed the jurisdiction of the State court to issue mandamus to a federal agent, although its issuance was reversed because of an interpretation of the federal statute which left the petitioner there without merit. Had the interpretation of the statute been otherwise, undoubtedly the state court mandamus against the federal agent would have been affirmed. (*Northern Pacific Ry. Co.* v. *North Dakota*, 250 U. S. 135, 142, 152.) This power is again confirmed by the case of *Riggs* v. *Johnson County* (6 Wall. [U. S] 166). In that case the Federal Circuit Court, within its proper ancillary jurisdiction, where the State court had first enjoined the county officers from levying a tax, mandamused those county officials to levy the enjoined tax, for the purpose of paying on the bonds, held to be obligatory on the county by the federal court judgment.

The exclusive theory of respondent is that the federal government is an independent sovereignty, with the state courts having no power to affect in anywise the administration of the federal tariffs and customs. The *Claflin* case demonstrates that that theory is incorrect, and the *Riggs* case destroys it by its holding that the federal courts — of one independent sovereignty — may command county officials — of another independent sovereignty — to comply with a *state statute* by levying a tax. Thus the power of one sovereignty by its courts to enforce the performance by officers of another sovereignty of a statutory governmental function, such as raising taxes, is demonstrated.

This power or jurisdiction must, in the absence of *congressional exclusion*, operate in favor of State as well as federal courts.

The cases cited by respondent are inapplicable here. When it is sought to have courts " interfere " by preventing or impairing performance by federal agents of their statutory duties, relief is *denied whether the court be federal or state*. Here the relief sought is to compel a compliance with the statute under which respondent is purporting to act — it is not to interfere with but to aid in enforcing duties imposed by statute. The only interference is with admittedly unlawful acts which are not " official " acts but nullities.

Moreover, where jurisdiction is conferred, the federal courts mandamus federal agents. (*Kendall* v. *United States*, 12 Pet. [U. S.] 524, 608, 619–621.) In that case the Federal Circuit Court for the District of Columbia issued peremptory mandamus to the Postmaster-General of the United States commanding his performance of a federal statutory duty. It declared the writ to be no longer a high prerogative one, to be granted or withheld in absolute discretion, but to be " considered a writ of right;  *  *  *." The power to issue mandamus, not vested generally in the federal courts, was held properly exercisable by the federal courts of the District of Columbia because Congress had vested them with the powers of the courts of Maryland. " The first section [of the act of Congress] declares, that the laws of the State of Maryland, as they now exist, shall be, and continue in force in that part of the district which was ceded by that State to the United States; which is the part lying on this side the Potomac, where the court was sitting when the mandamus was issued. It was admitted on the argument, that at the date of this act, the common law of England was in force in Maryland, and of course it remained and continued in force in this part of the district; and that the power to issue a mandamus in a proper case is a branch of the common law, cannot be doubted, and has been fully recognized as in practical operation in that State,  *  *  * "

(pp. 619-620). (Insertion supplied.) That recognized power must reside equally in our Supreme Court.

The argument of the respondent and the government comes to this: However intentional the violation of the mandatory and non-discretionary statute and however grave and destructive the injury and damages suffered by one of our citizens and with damages inadequate (*Kendall* v. *United States*, 12 Pet. [U. S.] 524, 614, 615), and mandamus the only adequate remedy, the respondent may deliberately refuse to perform its statutory duties, because the State court has no power to compel performance, although it may correct or punish the misbehaving federal agent in every way save by ordering compliance with the plain terms of the federal statute.

That argument is a direct challenge to our courts which traditionally and fundamentally exist to furnish a remedy and an effective one, if possible, for every invasion of a right. The words of the court in *Kendall* v. *United States* (*supra*, at p. 624) are indeed apt and cogent: " It is the prosecution of a suit to enforce a right secured by a special act of congress, requiring of the postmaster-general the performance of a precise, definite, and specific act, plainly enjoined by the law. It cannot be denied but that congress had the power to command that act to be done; and the power to *enforce the performance of the act must rest somewhere*, or it will present a case which has often been said to involve a monstrous absurdity in a well organized government, that there should be no remedy, although a clear and undeniable right should be shown to exist."

There is no other adequate remedy than mandamus. Recoverable damages are inadequate. (*Kendall* v. *United States*, *supra*, pp. 614, 615.) There is no jurisdiction in the customs authorities or courts to consider the question and, if there were, the power could not be effectively or adequately exercised by customs authorities or courts, for respondent would not or could not be a proper party to those proceedings and, if it were, there exists no power in those customs authorities or courts to command compliance by respondent

with the Tariff Act by certifying the actual market rates.

The facts are conceded; the violation is clear; the injury and damages grave. Our state courts in those circumstances should not abdicate nor minimize their constitutional and statutory powers, traditionally exercised, by failing to direct the issuance of the necessary mandamus order petitioned for and which constitutes the only adequate remedy against the continuance of a conceded wrong. Gelber in his Oxford Pamphlet, entitled " War for Power and Power for Peace," says (at p: 8): " All power corrupts, said Lord ACTON, and absolute power corrupts absolutely."

Respondent's argument that there is no power, federal or State, to correct or prevent this conceded wrong, arising out of uncontrolled power, is one to which this court cannot subscribe. That is government by men and not by law.

The order should be reversed, with costs.

LOUGHRAN, FINCH, RIPPEY, LEWIS and DESMOND, JJ., concur with LEHMAN, Ch. J.; CONWAY, J., dissents in opinion.

Order affirmed.