ALLEN CORPORATION, Bangor Corporation, Chester Corporation, Delaware Corporation, Early Corporation, Franklin Corporation, Indiana Corporation, June Corporation, King Corporation, Lane Corporation, Miami Corporation, North Corporation, Quaker Corporation, Reading Corporation, and Santee Corporation, Plaintiffs,

v.

Felix MEJIAS, as Economic Stabilization Administrator of the Economic Stabilization Administration of the Commonwealth of Puerto Rico, Defendant.

No. C. 27–57.

United States District Court
D. Puerto Rico,
San Juan Division.

Sept. 16, 1958.

William G. Grant, Atlanta, Ga., Benicio Sanchez Castano, San Juan, P. R., for plaintiffs.

J. B. Fernandez Badillo, Atty. Gen. of Puerto Rico, Edgar S. Belaval, Asst. Atty. Gen., for defendant.

RUIZ-NAZARIO, District Judge.

This action for a declaratory judgment presents to the Court a problem involving a conflict between a Commonwealth Officer and the plaintiff corporations who are, by the very nature of their corporate purpose and their actual activities in Puerto Rico, subject to the rules and regulations of the Commissioner of the Federal Housing Administration. Each of the plaintiffs is a South Carolina corporation, not domiciled in Puerto Rico and defendant Mejias is a resident citizen and public official of the Commonwealth of Puerto Rico. There is no question that this court has jurisdiction not only under Title 28 U.S.C.A. Sec. 1331 but also on the ground of diversity of citizenship. Title 48 U.S.C.A. § 863, Title 28 U.S.C.A. § 1332(a) (1).

Each plaintiff owns a large number of duplex apartments subject to mortgages insured by the Federal Housing Administration under section 608 of the National Housing Act. Title 12 U.S.C.A. § 1743(b) (1).

Section 608 of the National Housing Act (Sec. 1743(b) (1) Title 12 U.S.C.A.

as amended by Act of May 26, 1942) provides as follows:

"The Administrator (now Commissioner of the Federal Housing Administration) may, in his discretion, require such mortgagor to be regulated or restricted as to *rents or sales, charges,* capital structure, *rate of return,* and *methods of operation.* The Administrator may make such contracts with, and acquire for not to exceed $100 stock or interest in any such mortgagor, as the Administrator may deem necessary to render effective such restriction or regulation".

The Commissioner of the Federal Housing Administration owns all of the shares of the preferred stock of each of the corporate plaintiffs.

Each of the corporate plaintiffs entered into separate contracts with certain persons for the rental, subject to an option to purchase, of certain of the duplexes involved in this action. Under their contracts with the lessees, the latter are vested with an absolute right to purchase and acquire the leased property, at any time during the life of the lease, at such a price as will allow him, upon the exercise of the option, a credit for a portion of each $100 of rent paid, the credit thus provided being on an ascending scale according to the month and year in which the option is exercised. Thus each lessee builds up an ever increasing potential credit, to be applied to a fixed purchase price. The Commissioner of the Federal Housing Administration approved the renting of the duplex houses under the lease-option agreement described above. In approving the lease-option agreement the Commissioner expressly stipulated that the approved rent could not be either increased nor decreased without his written consent. No such consent has been given by the Commissioner. See affidavit of Mr. Harold Lockheimer, Director of the Federal Housing Administration in Puerto Rico, filed Feb. 19, 1958.

Defendant Mejias, as Economic Stabilization Administrator of the Economic Stabilization Administration of the Commonwealth, is the official charged with the enforcement of the Reasonable Rents Act of Puerto Rico. Title 23 L.P.R.A. § 705 and Title 17 L.P.R.A. §§ 181–214.

The controversy arises because under its terms the lease option agreement as approved by the Commissioner of the Federal Housing Administration requires the lessees-optionees under plaintiffs' contracts to maintain the leased premises in the same condition, order and repair, natural wear and tear excepted, as when leased by him, and on the other hand, a provision of the Reasonable Rents Act of Puerto Rico, Title 17 L.P.R.A. Sec. 190, which Act defendant has the duty to enforce, and presently threatens to enforce against plaintiffs, requires the lessor to make all necessary repairs to the leased properties. The plaintiffs thus cannot comply with the regulations of the Commissioner of the Federal Housing Administration without violating the Reasonable Rents Act of the Commonwealth; and on the other hand they cannot comply with the Reasonable Rents Act of the Commonwealth without violating the regulation of the Commissioner of the Federal Housing Administration, as embodied in the lease-option contracts.

Plaintiffs request a declaratory judgment determining whether the Reasonable Rents Act of the Commonwealth is applicable to the duplex dwellings leased by plaintiffs under the approved lease-option agreements, and that in the event that the said Reasonable Rents Act is applicable to said duplex dwellings, a declaratory judgment be entered determining whether or not the requirement of the approved lease-option agreement that the lessee shall keep the leased property in repair violates the aforesaid provision of the Reasonable Rents Act of the Commonwealth, Title 17 L.P.R.A. Sec. 190.

It is unnecessary to go into the history of the Federal Housing Administration to show that this instrumentality of the

National Government, created under a federal statute within the competency of Congress to enact, must be permitted to operate without being hamstrung by local state legislation. Suffice it to say that a finding was made to the effect that a nation-wide construction of housing was imperative, and that the Federal Housing Administration was set up to make nation-wide construction feasible. Under this vast plan the Commissioner is vested with power to regulate rentals and other conditions respecting the projects constructed under the statute, in the manner he deems most appropriate to an efficient and speedy achievement of the legislative purpose, and to the extent that these projects are concerned, the Federal Statute is paramount. Only the Commissioner of the Federal Housing Administration can change the rentals to be charged and the conditions respecting repairs to be complied with in connection with any housing units subject to Federal Housing Administration insurance.

A law passed by Congress in pursuance of the Constitution is paramount to a law passed by a state in the exercise of its sovereignty, under the express provision of the Constitution that it shall be the supreme law of the land.

Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23. Occupation of a legislative field by Congress in the exercise of a granted power suspends state laws in that field. Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315.

In Fieger v. Glen Oaks Village, 309 N.Y. 527, 132 N.E.2d 492, 494, the New York Court of Appeals stated as follows, in dismissing an action based on excessive rentals approved by the Federal Housing Administration:

"There are two different but equally conclusive reasons why this complaint cannot stand. The first of such reasons is that these allegedly excessive rentals were fixed by the Federal Housing Administrator or Commission (this, of course, has nothing to do with the emergency rent control laws but is a different statutory setup). Such a determination of the F.H.A. authorities represents Federal governmental action by authorized Federal officers. As made clear by Wasservogel v. Meyerowitz, 300 N.Y. 125, 89 N.E.2d 712, Schmoll Inc., v. Federal Reserve Bank, 286 N.Y. 503, 37 N.E.2d 225, 138 A.L.R. 1187, and older cases, the State courts have no power whatever to revise such official acts performed by Federal ·officials under authority of acts of Congress. In the Wasservogel case, supra, this court said flatly that when Federal authorities and Federal officers acting within their authority have fixed rents, the State courts may not in any manner revise or review those determinations, directly or indirectly, and that all State court action is forbidden when it would amount to 'assertion of control of the manner in which the Federal rent office performed the function assigned to it by Congress' (300 N.Y. 125, 89 N.E.2d 716). We see no escape from that here. The Federal Housing Act, as above stated, authorized the Administrator, 'in his discretion' (see § 608, subd. [b], par. [1]), to regulate rents. So empowered, he adopted rule or regulation section 280.30 under which he established maximum rents for these and similar properties. The maximum rents so established by him are still in effect and there is no assertion that the rents charged by defendants to these tenants were in excess of those maxima. We will assume with plaintiffs that this maximum rent fixation was for the benefit of tenants. There is nothing in that concept, however, which changes the settled law that the State courts cannot revise such an act of the Federal Government but must take heed of it and abide by it until it is changed by procedures, if any, established for such change. Such is the clear import of Wasservogel and the cases it cites."

Intervention by the defendant with the contractual relations between the plaintiff corporations and their lessees-tenants and revision of the rents approved by the Commissioner of the Federal Housing Administration would frustrate the purposes of the National Housing Act, and a judgment will be entered declaring that the Reasonable Rents Act of the Commonwealth of Puerto Rico cannot be applied and enforced against the duplex apartments involved in this action.